[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15117

_____

D.C. Docket No. 5:12-cv-00142-LGW-JEG

SHAWN WAYNE WHATLEY,

Plaintiff-Appellant,

versus

WARDEN, WARE STATE PRISON,
RODNEY SMITH,
Corrections Officer (C.E.R.T. Team)
Telfair State Prison,
EXAM NURSE,
Ware State Prison,
MICHAEL GRIFFIN,
Supervisor of Lock Down Unit &
Tactical Squad Commander,
Ware State Prison,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(September 23, 2015)

Before WILSON and MARTIN, Circuit Judges, and VINSON,[*] District Judge.

MARTIN, Circuit Judge:

Shawn Wayne Whatley appeals the dismissal of his 42 U.S.C. § 1983 prison-conditions suit.  His claims relate to a beating by prison staff, for which he was denied medical treatment.  Although he submitted several prison grievances before suing, the District Court dismissed his suit for failure to exhaust the administrative remedies established by the prison.  We reverse for two reasons: because the District Court failed to follow the two-step process we have created for deciding exhaustion challenges; and because in concluding that one of Mr. Whatley's grievances did not exhaust, the District Court enforced a procedural bar that the prison may have waived.

## I.    Legal Background

Before a prisoner may bring a prison-conditions suit under § 1983, the Prison Litigation Reform Act of 1995 requires that he exhaust all available administrative remedies.  42 U.S.C. § 1997e(a); see also Booth v. Churner, 532 U.S. 731, 736, 121 S. Ct. 1819, 1822 (2001).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."

---

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

Woodford v. Ngo, 548 U.S. 81, 93, 126 S. Ct. 2378, 2387 (2006) (quotation omitted). To properly exhaust, a prisoner must "[c]ompl[y] with prison grievance procedures." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 922–23 (2007).

Georgia's prison grievance procedures are set out in a standard operating procedure. See Turner v. Burnside, 541 F.3d 1077, 1080–81 (11th Cir. 2008) (describing the relevant SOP). The grievance process has three steps. *First*, an informal grievance. A prisoner must file an informal grievance within ten days of becoming aware of the facts giving rise to his grievance. He will receive a receipt when he files a formal grievance. A prison official must respond in writing within ten days. *Second*, a formal grievance. If the prisoner is not satisfied with the response to his informal grievance, he may request a formal grievance form. The prisoner must file a formal grievance within five days of receiving the written response to his informal grievance. Importantly, the SOP provides that a prisoner must "complete the informal grievance procedure before being issued a formal grievance" form.[1]

After receiving a formal grievance, a prison official must "thoroughly investigate" and "write a complete report," and then make a recommendation to the grievance coordinator. The grievance coordinator reviews the report, indicates

---

[1] After the facts relevant to Mr. Whatley's case, the SOP was amended to eliminate the requirement that prisoners first file an informal grievance before they may file a formal grievance.

3

whether she agrees or disagrees, and submits her recommendation to the prison's warden or superintendent.  The warden or superintendent reviews the grievance, then requests further investigation or responds in writing to the prisoner.  The warden must respond within thirty days after a prisoner files a formal grievance.  If the warden does not respond within forty days—thirty days plus a one-time, ten-day extension—the prisoner may appeal, as described immediately below.

*Third*, an appeal.  A prisoner may appeal a formal grievance to the Office of the Commissioner within five days of receiving a response to his formal grievance.  The prisoner must include in his appeal both the completed formal and informal grievance forms, and the commissioner must respond within 90 days.  The SOP does not provide a mechanism for appealing from an informal grievance.

After a prisoner has exhausted the grievance procedures, he may file suit under § 1983.  In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies.  See Turner, 541 F.3d at 1081.  In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust.  541 F.3d at 1082.  First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true.  The court should dismiss if the facts as stated by the

4

prisoner show a failure to exhaust.  Id.  Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.  Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

We "review de novo a District Court's interpretation and application of 42 U.S.C. § 1997e(a)'s exhaustion requirement."  Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005).  To the extent the District Court made specific factual findings, we review those for clear error, Bingham v. Thomas, 654 F.3d 1171, 1174–75 (11th Cir. 2011) (per curiam), but otherwise we "accept as true the facts as set forth in the complaint and draw all reasonable inferences in [Mr. Whatley's] favor," Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).

## II.    Factual and Procedural History

Mr. Whatley alleges that on January 12, 2011, he was beaten by guards at Telfair State Prison.  Within hours of the beating, he was transferred to Ware State Prison.  At Ware State Prison, despite his excruciating pain and difficulty breathing, a nurse simply told him to take Tylenol and, with a grin, told him he would "be real sore for a while."  Mr. Whatley filed several grievances in which he

5

at least arguably referred to the beating and the ensuing lack of medical treatment, three of which are relevant to our decision.

## A.    January 18 Grievance

On January 18, 2011, Mr. Whatley submitted an informal grievance—what we will refer to as his January 18 grievance. He received no response. In April, without filing a formal grievance, he filed an appeal to the Office of the Commissioner. In his appeal, he wrote that he was "severely and unjustly beaten" and transferred from Telfair to Ware. He explained that he was appealing his January 18 informal grievance only in April because he had not received an appeal form and had heard no response to his other grievances. The record is silent about what happened to this appeal.

## B.    "Imminent Danger" Grievance (Number 80327)

On February 10, 2011, just less than a month after the beating and a day after he was again transferred, this time from Ware to the Georgia Diagnostic and Classification Prison (GDCP), Mr. Whatley filed another informal grievance, numbered 80327. He wrote that he was in "imminent danger"—so we refer to this as the "imminent danger" grievance—and he requested transfer to a non-state facility or "protective custody from all Georgia] Department of Corrections] staff/employees, due to being severely beaten and transferred without treatment." This grievance was rejected on February 17. A prison official explained that the

6

grievance addressed prisoner transfers, which according to the SOP are not grievable issues.

## C.    Grievance Number 80940

On March 7, 2011, Mr. Whatley filed the last grievance relevant to this appeal, this one numbered 80940. In it, he explicitly referred back to his imminent danger grievance: "I filed an 'imminent danger' grievance," he wrote, and he said that "no response has been rendered" and "the allotted response time has expired." (Emphasis added.) He requested a formal grievance, and said that his grievances were being discarded. Grievance 80940 was also denied. A prison official recognized that this informal grievance referred back to his imminent danger grievance, but the official indicated that the imminent danger grievance had been rejected because it raised a non-grievable issue.

On March 22, the same day informal grievance 80940 was denied, Mr. Whatley filed a formal grievance. He again referred back to his imminent danger grievance, and also to the beating itself and the denial of medical care:

> Since my arrival on 2-9-11 [at GDCP] I have filed an informal grievance every week, the grievances are not being processed according to policy! Grievance #80327, "Imminent Danger" describe[d] the treatment that I have been under since 1-12-11, when I was unjustly and severely beat[en] at Telfair State Prison by [Officer] Smith and two other staff, and then transferred without medical attention! Then again transferred and place[d] in cruel and unusual punishment.

7

The warden rejected Mr. Whatley's formal grievance, explaining that his earlier, imminent danger grievance was rejected because it addressed a non-grievable issue, viz., institutional transfers. But importantly, the warden also appeared to address Mr. Whatley's claims about the beating and lack of medical care on the merits. He wrote: "Per phone conversation with [a nurse], you were seen at medical upon arrival [at GDCP] on 2-9-11 and there was no evidence supporting your claim of being severely beaten." (Emphasis added.)

Mr. Whatley appealed the warden's denial of his formal grievance. He responded to each of the warden's reasons for rejecting his formal grievance, insisting that he had receipts for his weekly grievances, and that this grievance (80940) was the only one that had received a response. Again he referred to the beating, and he disagreed with the warden's suggestion that medical staff at GDCP had found no evidence of the beating:

> As far as being beaten, that [grievance] was against another facility and it had been almost 2 months [sic—it had actually been only one month, from January 12 to February 10] since I had been assaulted, all [the nurse] did was check[] vital signs and asked about medications. No physical examination! Therefore no way she would have known what happened on 1-12-11 [the day of the beating].

Mr. Whatley's appeal was rejected. The appeal response noted only that his grievance had alleged that a prison staff member had violated the grievance procedure by not responding to a grievance. The response referred back to his

8

imminent danger grievance, and again explained that it had been rejected because it presented a non-grievable issue. Thus, the response concluded that Mr. Whatley's allegation was unfounded.

## D.     District Court Proceedings

Mr. Whatley filed a pro se § 1983 complaint in December 2012, alleging violations of the Eighth and Fourteenth Amendments. Before discovery, defendants moved to dismiss for failure to exhaust. In a 300-page filing including Mr. Whatley's prison records and copies of his grievances and the prison's responses thereto, defendants argued (among other things) that Mr. Whatley had failed to exhaust the grievance procedure. In response, Mr. Whatley said he had tried to complete the grievance procedure but that prison officials had not followed the SOP. He attached grievance receipts and other documents that were not in defendants' filing. A Magistrate Judge recommended dismissing Mr. Whatley's complaint for failure to exhaust. The District Court adopted the Magistrate Judge's R&R.

## III.     Discussion

We remand for two reasons. First, in holding that Mr. Whatley's January 18 informal grievance did not exhaust administrative remedies, the District Court erred by not following the two-step process we described in Turner. And second, in holding that grievance 80940 did not exhaust, the District Court erred by

enforcing a procedural bar that the prison itself may have waived.  We discuss each alternative ground for reversal in turn.

## A.    Two-Step Turner Process

In response to defendants' motion to dismiss for lack of exhaustion, Mr. Whatley alleged that: he filed his first informal grievance about the beating and lack of medical care on January 18; he never received a response; and he filed an appeal about three months later.  He also submitted exhibits in support of these allegations, including a receipt from filing the January 18 informal grievance (Exhibit X) and a copy of his appeal of that same grievance (Exhibit X1).  The District Court discussed this grievance and Mr. Whatley's exhibits in support:

> [T]hese exhibits lend no support to [Mr. Whatley's] contention that he properly exhausted his available administrative remedies. Exhibit X is a receipt for an informal grievance which was submitted on January 18, 2011, and concerned an incident occurring on January 12, 2011 [i.e., the day of the beating].  However, the receipt contains no number or content, making it impossible to determine about what Plaintiff grieved.

> Exhibit X1, which is presumably an appeal to the Commissioner's Office of this unnumbered informal grievance at Exhibit X, also does not contain a number.  While Plaintiff mentions that he submitted an informal grievance on January 18, 2011, and alleged in that informal grievance that he was assaulted by three (3) staff members at Telfair State Prison, he admits that his appeal is untimely.  In addition, there is no indication that Plaintiff followed the proper grievance procedures by first filing a formal grievance before he filed an appeal.

10

The undersigned notes Plaintiffs assertion in this appeal that he had not received a response to his informal grievance, which meant that he could file an appeal with the Commissioner's Office. It appears that Plaintiff misreads the applicable Standard Operation Procedure, which allows for an appeal without a response to a formal grievance rather than an informal grievance.

The District Court did not properly undertake either of the two <u>Turner</u> steps. It did not, consistent with the first <u>Turner</u> step, accept Mr. Whatley's facts as true and ask whether, given those facts, the January 18 grievance exhausted his administrative remedies.  Neither did the court proceed to the second <u>Turner</u> step: identifying particular factual disputes, then making "specific [fact] findings" to resolve those disputes and decide whether the January 18 grievance exhausted administrative remedies.  See <u>Turner</u>, 541 F.3d at 1082 (mandating that, in the second step, district courts "proceed to make <u>specific findings</u> in order to resolve the disputed factual issues related to exhaustion" (emphasis added)).

As to the first step, it is clear that the District Court did not accept Mr. Whatley's facts as true and make the exhaustion determination on his view of the facts.  The court wrote that the January 18 informal grievance could not have exhausted Mr. Whatley's administrative remedies because the grievance receipt (Exhibit X) "contain[ed] no number or content," so it was "impossible to determine about what Plaintiff grieved."  Yet Mr. Whatley explicitly alleged that the January 18 grievance "was for being brutally and severely beaten at Telfair State Prison

11

and transferred without medical treatment." Under Mr. Whatley's version of the facts, the January 18 grievance was about the January 12 beating and the denial of medical care for his injuries. The District Court never credited this allegation.

The District Court also failed to accept Mr. Whatley's facts as they related to his attempts to follow the SOP when filing this grievance. The court said Mr. Whatley skipped the second grievance step when he directly appealed the informal grievance without first filing a formal grievance. "[T]here is no indication," the District Court wrote, "that Plaintiff followed the proper grievance procedures by first filing a formal grievance before he filed an appeal."

It is true that the SOP contemplates a three-step grievance procedure: informal grievance, formal grievance, and then appeal. And it is also true that Mr. Whatley alleged only that he completed the first and third steps of that procedure— filing an informal grievance, then proceeding directly to an appeal, without completing a formal grievance (the second step). But Mr. Whatley said he proceeded directly to appeal because he heard no response to his informal grievance. And under the SOP, without receiving a response to his informal grievance he could not have made a formal grievance. The SOP provides that a prisoner "must complete the informal grievance procedure before being issued a formal grievance" form. Accepting Mr. Whatley's allegations, the prison's failure

12

to respond to his grievance prevented him from "complet[ing] the informal grievance procedure."[2]  The District Court faulted Mr. Whatley for failing to file a formal grievance—something that, according to his allegations and the SOP, the prison prevented him from doing.[3]

Neither did the District Court undertake the second Turner step, in which courts must "make specific findings in order to resolve disputed factual issues related to exhaustion."  See 541 F.3d at 1082.  In response to Mr. Whatley's allegations about the January 18 informal grievance and his exhibits in support of those allegations, defendants suggested that Mr. Whatley's exhibits—including the

---

[2] Compare these facts to Turner.  There, we rejected an argument by a prisoner that the warden's failure to respond to a formal grievance necessarily relieved him of his obligation to appeal.  We explained that the SOP (identical to the one here) gave instructions about what to do in that circumstance: when a prisoner receives no response to a formal grievance, he should appeal no later than five days after "the thirty-day time limit for a response had passed."  Turner, 541 F.3d at 1084.  Because the prisoner did not do so, we held he had failed to follow the SOP. That was because the SOP provided instructions for a prisoner, like Mr. Turner, whose formal grievance received no response.  (In Turner we ended up remanding for the district court to determine whether, based on the prisoner's allegations that he had been threatened by the warden, the grievance process was "available" to such that the prisoner was required to follow it. See 541 F.3d at 1086.)

By contrast, the SOP provides no guidance to a prisoner, like Mr. Whatley, who receives no response to an informal grievance.  He was in uncharted waters, without instruction from the SOP, so the District Court should not have faulted him for taking the route that he did.

[3] These facts also undermine the District Court's conclusion that Mr. Whatley "admit[ted] that his appeal [wa]s untimely."  Under Mr. Whatley's view of the facts, he filed an informal grievance to which the prison never responded.  He then filed an appeal about three months later.  It is true that the SOP requires a prisoner to take an appeal from the rejection of a formal grievance within five days.  But Mr. Whatley was prevented from filing a formal grievance because the prison never responded to his informal grievance.  And the SOP gives no instruction to prisoners about how they should proceed if the prison does not respond to an informal grievance.  Given the SOP's silence on this point, at the first Turner step the District Court should not have concluded that Mr. Whatley violated the SOP.

13

signed informal grievance receipt— were "a fraud on th[e] court." They argued that the signatures on the exhibits were forgeries, and supported that allegation with an affidavit from the prison officer whose signature appeared at the bottom of the grievance receipt. The officer stated that she did not write or sign the documents, so they were "not authentic." The thrust of defendants' response is that Mr. Whatley fabricated the January 18 informal grievance out of whole cloth—it never happened.

Mr. Whatley's allegations and exhibits, and defendants' contentions in response, created a factual dispute. Did Mr. Whatley file an informal grievance on January 18 (as he alleged), or did he make false allegations and create forged documents in an effort to show that he had filed that grievance when in fact he had not (as defendants alleged)? The District Court neither identified this "disputed issue of fact," nor made "specific findings" to resolve it one way or the other.

Defendants ask us not to remand for the District Court to follow the two-step Turner process. They say we should simply affirm, finding on our own that the January 18 grievance is a fiction and that Mr. Whatley fabricated the entire episode. But we are a court of appeals. We do not make fact findings. We review them for clear error. Without any explicit findings of fact (at best only implicit ones, even under defendants' view), we cannot undertake that review.

14

Our precedent requires district courts to first accept the prisoner's version of the facts as true and ask whether the suit is subject to dismissal for failure to exhaust. If the answer is "no," the court should proceed to make specific fact findings. We will review <u>de novo</u> the results of the first step, and we will review for clear error the fact findings made as part of the second step. In this case the record does not reflect whether the District Court dismissed Mr. Whatley's suit on the first step or on the second step; whether the District Court accepted Mr. Whatley's version of the facts as true, such that we should review the court's conclusions <u>de novo</u>; or whether the District Court (implicitly) identified factual disputes and (implicitly) resolved them in favor of defendants, such that we should review the court's fact findings for clear error. Because we cannot evaluate the District Court's conclusions on this record, we must reverse for the court to properly undertake the two-step <u>Turner</u> process.

## B.    Procedural Bar

We also reverse because in concluding that grievance 80940 did not exhaust administrative remedies, the District Court enforced a procedural bar that the prison itself may have waived. We join our sister Circuits in holding that district courts may not find a lack of exhaustion by enforcing procedural bars that the prison declined to enforce.

15

In filing grievance 80940, Mr. Whatley undisputedly went through each step of the grievance procedure. He filed an informal grievance on March 7, 2011, received a rejection on March 17, filed a formal grievance on March 22, received a rejection of his formal grievance on April 27, filed an appeal on April 28, and received a rejection of the appeal on June 14. Indeed, the Magistrate Judge recognized that Mr. Whatley "completed the grievance process for Grievance Number 80940."[4]

Still, the Magistrate Judge found that grievance 80940 did not exhaust administrative remedies. He explained that the grievance "suffer[ed] from a flaw": the informal grievance did not discuss the beating or the denial of medical care—the issues raised in Mr. Whatley's § 1983 complaint. And under the SOP, the prison may refuse to consider issues not raised in an informal grievance. The Magistrate Judge wrote that this procedural flaw meant grievance 80940 could not properly exhaust administrative remedies: "Plaintiff's failure to include a ground in his informal grievance <u>would result in the rejection of that formal grievance containing that ground</u>." (Emphasis added.)

We cannot agree. The Magistrate Judge's conclusion that the procedural flaw "would result in the rejection" of grievance 80940 is belied by the record: it

---

[4] The District Court did not discuss this grievance at all, but it "adopted" the Magistrate Judge's R&R "as the opinion of the Court."

16

does not appear that the prison rejected the grievance on that ground. While it is true that the prison could have rejected grievance 80940 by enforcing this procedural rule, it instead seemed to ignore the procedural flaw and consider the merits of Mr. Whatley's claims. The District Court should not have enforced a procedural bar that may have been waived by the prison.

When Mr. Whatley filed formal grievance 80940, he explicitly referred to the beating. He wrote that his earlier grievance, "Grievance #80327, 'Imminent Danger,' describe[d] the treatment that [he] ha[d] been under since 1-12-11 when [he] was unjustly and severely beat[en] at Telfair State Prison . . . and then transferred without medical attention." And in response to Mr. Whatley's formal grievance, the warden seemingly considered and rejected on the merits his claim about being beaten: "Per phone conversation with Nurse Gore, you were seen at medical upon arrival [at GDCP] on 2-9-11 and there was no evidence supporting your claim of being severely beaten." (Emphasis added.) That is, while the warden could have rejected Mr. Whatley's grievance on the procedural ground identified by the Magistrate Judge, he apparently did not.

Nevertheless, the Magistrate Judge enforced this procedural bar. On appeal Mr. Whatley points to out-of-circuit cases holding that district courts should not find a lack of exhaustion by enforcing procedural rules that were not enforced by

17

the prison.  He says that because the prison overlooked his grievance's procedural flaw and addressed his claims about the beating on the merits, the District Court should not have enforced the procedural rule to find a lack of exhaustion. Although our Circuit has never had occasion to consider this principle, we agree and join our sister Circuits in so holding.

The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford, 548 U.S. at 93, 126 S. Ct. at 2387.  As one of our sister Circuits has explained, the benefits of the exhaustion requirement "are fully realized when an inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits, even if the decision-maker could have declined to reach the merits because of one or more procedural deficiencies." Hammett v. Cofield, 681 F.3d 945, 947 (8th Cir. 2012) (per curiam) (emphasis added).  As the Magistrate Judge recognized, Mr. Whatley "pursue[d] the prison grievance process to its final stage," id., and in denying his formal grievance the warden appeared to give Mr. Whatley "an adverse decision on the merits," id., even though the warden "could have declined to reach the merits," id., based on a procedural flaw.

18

Every one of our sister Circuits that has faced this question has held the same way: a procedural flaw ignored by a prison cannot later be resurrected by the District Court to defeat exhaustion. See id.; Hill v. Curcione, 657 F.3d 116, 125 (2d Cir. 2011) ("Today, we . . . hold that the exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority."); Reed-Bey v. Pramstaller, 603 F.3d 322, 325 (6th Cir. 2010) ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we."); Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) ("Failure to comply with administrative deadlines dooms the claim except where the institution treats the filing as timely and resolves it on the merits."); Ross v. Cty. of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004) ("If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). We find particularly persuasive the Sixth Circuit's lucid explanation:

> When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on their merits, so as a general rule will we. In that setting, the State, as the promulgator of the [grievance] rules, has had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served. When the State nevertheless

19

> decides to reject the claim on the merits, who are we to second guess its decision to overlook or forgive its own procedural bar?  The rules serve the State's interests: its interest in creating a prison grievance system, its interest in reviewing a complaint before another sovereign gets involved and its interest in deciding when to waive or enforce its own rules.  And the State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim.

Reed-Bey, 603 F.3d at 325 (citation omitted).

This principle is a sound one, and we adopt it as the law of our Circuit.  We hold that a prisoner has exhausted his administrative remedies when prison officials decide a procedurally flawed grievance on the merits.  In other words, we hold that district courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the rule.

But as an appeals court, we are not in a position to find, in the first instance and as a factual matter, whether the prison declined to enforce its rule and waived the procedural flaw in this case.  On appeal the parties argued at length over whether the warden's response to Mr. Whatley's formal grievance in fact addressed the merits of his claims about being beaten, or whether the warden was instead responding to Mr. Whatley's complaints about his earlier grievances being ignored.  As before, we must reverse for the District Court to make the necessary findings of fact.

**REVERSED.**

20

VINSON, District Judge, concurring specially:

I agree with the majority that the District Court did not follow the two-step procedure set forth in Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).  I also agree with the majority (and with every circuit that has considered the issue) that the state waives an exhaustion defense when it addresses and decides a prisoner's grievance on the merits even though the grievance could have been --- but was not --- denied on a valid procedural ground.  See, e.g., Hill v. Curcione, 657 F.3d 116 (2d Cir. 2011); Reed–Bey v. Pramstaller, 603 F.3d 322 (6th Cir. 2010); Conyers v. Abitz, 416 F.3d 580 (7th Cir. 2005); Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), abrogated on other grounds by Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910 (2007); Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).  However, this case presents a slightly different factual situation than existed in those cases, which raises some subtle additional issues.

In each of the cases cited above and by the majority, the "waiver rule" was applied where the state had decided the grievance on the merits at every stage of review, or at least at the final administrative stage.[1]  Here, by contrast, it appears that while the warden may have addressed the beating claim "on the merits" at the

---

[1] A district court in our circuit has noted this distinction in a well-analyzed decision. See Hall v. Dunlap, 2014 WL 1315398, at *2-4 (M.D. Ga. Mar. 31, 2014) ("most courts in circuits that have adopted a waiver rule would apparently require a decision on the merits at every stage of review or at least at the last stage before finding a waiver of exhaustion") (citing multiple cases).

21

second stage of administrative review, it is unclear whether the Commissioner's

Office did so at the third and final stage.[2]

If a state's last administrative body denies a grievance for valid procedural

reasons, the court is required to find that grievance unexhausted under the PLRA.

This conclusion serves the purposes of exhaustion in that it promotes efficiency, it

"gives an agency 'an opportunity to correct its own mistakes . . . before it is haled

into federal court,' and it discourages 'disregard of [the agency's] procedures.'"

See Woodford v. Ngo, 548 U.S. 81, 89, 126 S. Ct. 2378, 2385 (2006).  It is also

supported by the fact that courts have repeatedly drawn "parallels" between the

PLRA and the law governing habeas corpus.  Reed-Bey, 603 F.3d at 325 (citing

Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002), and concluding that

"[i]t makes considerable sense to adopt similar approaches in addressing similar

concerns under the two regimes").  Under the habeas regime, "'a procedural

default does not bar consideration of a federal claim . . . unless the last state court

rendering a judgment in the case clearly and expressly states that its judgment rests

---

[2] It is unclear due to the nature of the grievance itself.  The underlying grievance (80940) dealt largely with an alleged procedural violation, i.e., the prison's failure to follow proper grievance procedure for Whatley's previous "imminent danger" grievance, which, in turn, was tied to the alleged beating.  In denying grievance 80940, the Commissioner's Office stated that the earlier grievance had been denied as "non-grievable" under the SOP, and, also, because "we found no evidence to indicate [a violation] of GDC's grievance procedure".  It is thus debatable whether the Office of the Commissioner rejected the grievance on procedural grounds or "on the merits" (and whether the grievance was sufficiently connected to the beating at issue), and I believe this is a critically important question that must be resolved.

on a state procedural bar,' or it is otherwise clear they did not evaluate the claim on the merits." Id. (quoting Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043 (1989) (emphasis added)).

Thus, I would remand this case for the reasons that the majority has noted, including a factual confirmation that the warden resolved grievance 80940 on the merits at the second step of review. If that is confirmed, the District Court must then consider the more legally significant question of whether the grievance was considered and resolved on the merits by the Commissioner's Office at the third and final step. If it was, the state waived its exhaustion defense, as every circuit has held. On the other hand, if the commissioner's final decision denying the grievance was based on a valid procedural reason, then Whatley's grievance must be treated as unexhausted, regardless of whether the warden's earlier decision was on the merits.