[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11790
Non-Argument Calendar
_____

D.C. Docket No. 5:13-cv-00233-WS-GRJ


JOHN PAVAO,

                                                        Plaintiff-Appellant,

versus

SIMS,
Officer Sgt,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(February 10, 2017)

Before TJOFLAT, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

John Pavao, a Florida state prisoner proceeding *pro se*, filed this 42 U.S.C. § 1983 civil rights lawsuit against Joseph Sims, formerly a correctional officer at Apalachee Correctional Institution ("Apalachee").  Pavao alleged that Sims deliberately provoked his cellmate to attack him until he blacked out and then threatened him with retaliation for seeking redress through the prison grievance system.  The district court dismissed Pavao's lawsuit for failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).  On appeal, Pavao argues that he exhausted all remedies available to him but that the prison refused to address the merits of his complaints.  After careful review, we affirm.

## I.

Pavao claims that on November 30, 2012, Sims falsely accused Pavao of being a child molester and a confidential informant for the Federal Bureau of Investigation and provoked his cellmate to attack him for those reasons.  Pavao's cellmate then repeatedly punched and kicked Pavao until he blacked out.  Due to his injuries, Pavao required stiches and was temporarily placed in protective custody.  While he was in protective custody, Sims verbally harassed him for being a "snitch."  His cellmate was not disciplined.

Pavao further alleged that he used the prison grievance procedure at Apalachee to seek redress.  According to Pavao's complaint, he filed a grievance

2

relating to the November 30 incident on December 10, 2012, but the prison returned the grievance without processing for writing outside the boundaries of the form. Also, Pavao was told to file a grievance with the "Colonel" because he had alleged staff misconduct. Later on, Pavao sought judicial remedies in Florida state court because he believed that his safety was in danger at the prison. The court forwarded his correspondence to the Inspector General of the Florida Department of Corrections ("FDOC") but otherwise took no action.

Sims filed a pre-answer motion to dismiss, arguing that Pavao failed to exhaust the administrative remedies available to Florida prisoners before bringing his § 1983 claims. Sims recognized that Pavao had taken some steps to exhaust his § 1983 claims, but he argued that these efforts were inadequate to demonstrate exhaustion under the PLRA because he did not fully comply with the grievance procedure outlined in Florida Administrative Code § 33-103. Exhaustion under § 33-103 generally requires three steps: (1) an informal grievance; (2) a formal grievance; and (3) an administrative appeal. Because Pavao did not comply with this three-step procedure or other procedural regulations, Sims asserted, the court should dismiss Pavao's lawsuit for failure to exhaust.

Sims attached to his motion to dismiss evidentiary materials documenting Pavao's relevant grievance history. This evidence reflects that before filing suit Pavao attempted to file a total of seven grievances relating to his allegations

3

against Sims, all of which were returned without processing for non-compliance with § 33-103. What follows is a summary of these grievances.

On December 10, 2012, Pavao filed a grievance directly with the Secretary of the FDOC (Administrative Appeal No. 12-3-39805).[1] The grievance recounted the allegations regarding Sims but did not name him. Further, Pavao asserted that his telephone and address book had been confiscated and that the disciplinary board had acted improperly in finding him guilty of an infraction on November 30.[2] Pavao requested transfer to a different prison and the return of his telephone and address book. In a separate letter that appears to have been sent with the grievance, Pavao wrote that he was sending the grievance directly to the Secretary because he feared for his life and did not trust "any officer or staff."

Grievance No. 12-3-39805 was returned without processing for non-compliance with § 33-103 because it addressed more than one issue or complaint, failed to provide relevant information such as names, and had writing on the back

---

[1] The parenthetical information following each grievance represents how the grievance was processed and logged by either Apalachee or the FDOC.

[2] Pavao's grievances indicate that he was disciplined for conduct relating to but preceding Sims's alleged misconduct. Specifically, Pavao indicates that, on November 30, 2012, he was in the prison chapel enjoying a "Gospel Express Family Performance." One of the performers was a teenager who reminded Pavao of his son. Because he missed his son deeply, Pavao approached the teenager after the performance to thank him and to tell him of the resemblance. As he approached the teenager, Pavao blacked out and then woke up on the ground, crying. When he left the chapel, Pavao was taken into disciplinary confinement and charged with making unauthorized physical contact with the teenager. Shortly thereafter and because of these events, Pavao explained, Sims accused him of being a child molester and provoked his cellmate to attack him. Later on, a disciplinary board found him guilty of the unauthorized-physical-contact infraction.

4

of the form. The response also directed Pavao to initiate each issue "at the appropriate level at the institution" and "to file an informal to the Colonel" if he feared staff because the Colonel should have the opportunity to address issues of staff misconduct.

Pavao filed three more grievances in December 2012, presenting nearly identical allegations in each. He filed (a) a grievance with the Warden of Apalachee on December 19 (Formal Grievance No. 1212-102-096), which was returned without processing because he wrote on the back of the form rather than attaching separate pages; (b) a grievance with the Secretary of the FDOC on December 21 (Administrative Appeal No. 12-6-40775), which was returned without processing for non-compliance for largely the same reasons as No. 12-6-39805; and (c) another grievance with the Warden on December 27, which was returned without being logged for having been submitted on a self-created form. It appears that Pavao had attempted to resubmit Formal Grievance No. 1212-102-096 on the self-created form.

Then, in February and March 2013, Pavao filed three additional grievances alleging that the prison had failed to respond to his prior grievances. On February 21, 2013, Pavao filed a grievance with the Warden (Formal Grievance No. 1302-102-077) alleging that he had not received a response to a "corrective grievance" he had filed relating to No. 1212-102-096. He also requested that he be transferred

5

to another prison because he was afraid that the inmate who had attacked him on November 30 would attack him again.

Grievance No. 1302-102-077 was returned without processing because it addressed more than one issue. The response also stated that Pavao was required to first file an informal grievance in order to complain about a failure to receive a grievance response, that any issues regarding fear of other inmates needed to be addressed with the Colonel through an "Inmate Request," not the grievance procedure, and that transfer issues required an informal grievance first before moving to the next level.

Also on February 21, 2013, Pavao filed a grievance with the Secretary of the FDOC (Administrative Appeal No. 13-6-06645) alleging that he had corrected No. 12-6-39805 by refiling his allegations in three separate grievances on December 28, but that he had received no response. The grievance was returned without processing because Pavao had not submitted his grievance to the appropriate level of the institution or provided an acceptable reason for not doing so.

Finally, on March 13, 2013, Pavao filed a grievance (Informal Grievance No. 2013-03-0309) regarding the lack of response to his "corrective grievance" relating to No. 1212-102-096. The grievance was denied. The response noted that Pavao's "corrective grievance," understood to mean the December 27 grievance

submitted on a self-created form, had been returned for non-compliance with the grievance procedure.

In his response to Sims's motion to dismiss, Pavao claimed that he had done all he could to exhaust his remedies. Pavao recounted additional efforts he took after he filed his complaint, but he did not contradict the factual allegations in Sims's motion to dismiss or allege that he filed any grievances or appeals, other than those described above, before filing his complaint in federal district court. Pavao also attached affidavits stating that he had been harassed by correctional officers and inmates since filing the instant complaint and that the cellmate who assaulted him also raped him at Sims's instruction.

A magistrate judge issued a report and recommendation ("R&R"), recommending that Pavao's complaint be dismissed for failure to exhaust his administrative remedies. The magistrate judge determined that there was no material conflict between the factual allegations of Sims' motion to dismiss and Pavao's response, and that the record demonstrated that Pavao did not complete the three-step grievance procedure required by § 33-103 with respect to his allegations against Sims. The district court adopted the R&R over Pavao's objections and dismissed his complaint. This appeal followed.

**II.**

7

We review *de novo* a district court's interpretation and application of the PLRA's exhaustion requirement, as codified in 42 U.S.C. § 1997e(a). *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005). We review the factual findings underlying an exhaustion determination for clear error. *Bryant v. Rich*, 530 F.3d 1368, 1377 (11th Cir. 2008).

### III.

The PLRA requires prisoners who wish to challenge some aspect of prison life to exhaust all available administrative remedies before resorting to the courts. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see* 42 U.S.C. § 1997e(a). Exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007).

To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison. *Id.* at 218; *Johnson*, 418 F.3d at 1156. In other words, "[t]he PLRA requires 'proper exhaustion' that complies with the 'critical procedural rules' governing the grievance process." *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). The prison's requirements, and not the PLRA, define the boundaries of proper exhaustion, so "the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim." *Id.* at 1211 (quoting *Jones*, 549 U.S. at 218).

8

Although proper exhaustion is generally required, a remedy must be "available" before a prisoner is required to exhaust it. *Turner v. Burnside*, 541 F.3d 1077, 1082, 1084 (11th Cir. 2008). Administrative remedies are unavailable in three main scenarios. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016); *Turner*, 541 F.3d at 1083 (the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . that they will refuse to abide by the established ones"). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859; *Turner*, 541 F.3d at 1084 ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). And third, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860; *Turner*, 530 F.3d at 1385 (holding that serious threats of retaliation may make remedies unavailable).

In response to a prisoner lawsuit, defendants may file a motion to dismiss and raise as a defense the prisoner's failure to exhaust administrative remedies. *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015). We

9

have established a two-step process for deciding motions to dismiss for failure to exhaust under the PLRA. *Id.* District courts first should compare the factual allegations in the motion to dismiss and those in the prisoner's response and, where there is a conflict, accept the prisoner's view of the facts as true. "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." *Id.* Second, if dismissal is not warranted at the first stage, the court should make specific findings to resolve disputes of fact, "and should dismiss if, based on those findings, defendants have shown a failure to exhaust." *Id.* (noting that defendants bear the burden of showing a failure to exhaust).

## A.    *Florida's Prison Grievance Procedure*

The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. *Dimanche*, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. *See* Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits

10

set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. *See id.* § 33-103.011(4).

The ordinary three-step procedure, however, does not necessarily apply in all instances. For certain types of grievances, including "grievance[s] of reprisal," prisoners may elect to skip the first two steps and file a grievance directly with the Secretary of the FDOC.[3]  *Id.* § 103.005(1). A "grievances of reprisal" is "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." *Id.* § 103.002(9).

As relevant here, § 33-103 outlines additional procedural requirements applicable to all formal grievances, administrative appeals, and direct grievances.[4] Each grievance must address "only one issue or complaint." Fla. Admin. Code §§ 33-103.006(2)(f), 33-103.007(2)(f). Further, the prisoner must state his grievance in Part A of Form DC1-303 and, if additional space is needed, on no more than two additional pages of narrative. *Id.* §§ 33-103.006(2)(c), 33-103.007(2)(c). "If the [prisoner] writes his complaint anywhere other than within

---

[3] In addition, grievances alleging sexual abuse are subject to different requirements. Although Pavao now alleges that he was raped by the cellmate at Sims's instigation, he concedes that he never raised the issue of sexual abuse in a grievance before filing suit. *See* Fla. Admin. Code § 33-103.006(j).

[4] Informal grievances are subject to similar procedural requirements. *See* Fla. Admin. Code § 33-103.005(2)(b)(2).

the boundaries of Part A or on the 2 allowable attachment pages, his grievance shall be returned for non-compliance." *Id.*

## B.    *Analysis of Pavao's Efforts to Exhaust*

Here, the district court did not err by dismissing Pavao's complaint for failure to exhaust his administrative remedies.  The facts alleged in Sims's motion to dismiss and Pavao's response are not in material conflict, and they demonstrate that Pavao did not complete the administrative process in accordance with the applicable grievance procedures set forth in § 33-103 of the Florida Administrative Code.  *See Jones*, 549 U.S. at 218; *Johnson*, 418 F.3d at 1156.

First, it is apparent from Pavao's allegations and Sims's evidence that Pavao did not comply with the sequential three-step grievance procedure with regard to his allegations against Sims.  *See Dimanche*, 783 F.3d at 1211.  Critically, Pavao did not file an informal grievance about the November 30, 2012, events involving Sims.[5]  While Pavao clearly did submit a number of other grievances and appeals complaining about Sims, these submissions were not on the form used for informal grievances, nor were they treated by the prison as informal grievances.  In any case, all of Pavao's submissions were returned for non-compliance with one or more procedural rules.  Accordingly, even though Pavao repeatedly presented the

---

[5]  The only informal grievance Pavao filed alleged a lack of response to his "corrective grievance" relating to No. 1212-102-096, but there is no indication that Pavao continued through the grievance process by filing a formal grievance and administrative appeal after the denial of his informal grievance.

12

substance of his allegations to the prison, his efforts were not sufficient to exhaust because he did not comply with "the 'critical procedural rules' governing the grievance process" by going through the three-step procedure. *See id.* at 1210.

Second, even if Pavao could have bypassed the three-step procedure and filed a "grievance of reprisal" directly with the Secretary of the FDOC, there is no basis in the record to conclude that Pavao exhausted his administrative remedies under this route. The two grievances Pavao filed directly with the Secretary of the FDOC complaining about Sims's misconduct (No. 12-3-39805 & No. 12-6-40775) were returned without processing for non-compliance with § 33-103. Specifically, both grievances were returned because, among other reasons, they addressed more than one issue or complaint, in non-compliance with § 33-103.007(2)(f), and had writing on the back of the form, in non-compliance with § 33-103.007(2)(c). Thus, the Secretary of the FDOC never reached the merits of Pavao's complaints.

Third, Pavao's efforts to exhaust after filing his complaint are not relevant to the question of whether he exhausted his administrative remedies as required by the PLRA. "The time the statute sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied." *Goebert v. Lee Cty.*, 510 F.3d 1312, 1324 (11th Cir. 2007). So, in determining whether Pavao exhausted his administrative remedies, we do not consider any actions he took after filing suit in

13

June 2013.  Relatedly, Pavao's efforts to seek redress from the Florida state courts or the Inspector General of the FDOC are not relevant to the question of exhaustion because they are not part of the prison grievance procedure, and therefore are outside the "boundaries of proper exhaustion."  *See Dimanche*, 783 F.3d at 1210.

Finally, neither Pavao's allegations nor the evidentiary materials in the record indicate that the administrative remedies provided in § 33-103 were unavailable to him.  Liberally construed, Pavao's filings advance three arguments about the unavailability of remedies.  He first suggests that the prison and the Secretary of the FDOC simply failed to respond to his grievances, preventing him from completing the grievance process.  He specifically references the prison's alleged failure to respond to Formal Grievance No. 1212-102-096.  But even assuming that the prison failed to respond to that grievance, the grievance procedure provides that he could have "proceed[ed] to the next step of the grievance process"—administrative appeal—after the expiration of 20 days.  *See* Fla. Admin. Code § 33-103.011(3), (4).  Because he could have proceeded by filing an administrative appeal, the PLRA still requires him to file an appeal notwithstanding the prison's lack of response.  *Cf. Turner*, 541 F.3d at 1084 (stating that a prison's failure to respond to a formal grievance did not relieve the prisoner of his obligation to file an appeal when the grievance procedure provided

14

that prisoners could file an appeal if they did not receive a response to a formal grievance within 30 days).

Pavao next suggests that the prison and the Secretary of the FDOC failed to follow their own rules when they returned his grievances on procedural grounds without reaching the merits. We have carefully reviewed the record and the applicable regulations, however, and we see no indication that the prison or the Secretary improperly rejected a grievance that is material to the exhaustion determination. As mentioned above, Pavao did not properly initiate the three-step grievance process by filing an informal grievance about the November 30, 2012, events involving Sims. And Pavao's potential direct grievances, No. 12-3-39805 & No. 12-6-40775, reasonably were found to be non-compliant because they contained more than one issue or complaint. Thus, the record does not support a conclusion that the grievance process "operate[d] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *See Ross*, 136 S. Ct. at 1859.

Pavao lastly alleges that Sims threatened him with retaliation for seeking redress through the prison grievance procedure. For a prison official's threats of retaliation against a prisoner to make the administrative remedy "unavailable," the threat must (1) actually deter the prisoner from lodging a grievance or pursing a particular part of the process and (2) be one that would deter a reasonable prisoner

15

of ordinary fortitude from doing so. *Turner*, 541 F.3d at 1085. Here, the record is clear that any retaliation or threats of retaliation did not deter Pavao from continuing to file grievances. Accordingly, Sims's alleged threats did not make the administrative remedy unavailable.

For these reasons, the district court did not err in concluding that Pavao, despite his extensive efforts to inform the prison, the Secretary of the FDOC, and others of Sims's alleged misconduct, did not properly exhaust the administrative remedies available to him under § 33-103 of the Florida Administrative Code. Accordingly, we affirm the dismiss of his complaint for failure to exhaust as required by the PLRA, 42 U.S.C. § 1997e(a).

**AFFIRMED.**