[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11080
Non-Argument Calendar
_____

D.C. Docket No. 5:17-cv-00363-MTT-MSH


MARCO MCILWAIN,

                                                          Plaintiff-Appellant,

versus

DR. EDWARD BURNSIDE,
GDCP,
L. ADAIR,
Nurse, GDCP,
LIEUTENANT A. UGLEE,
GDCP,

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(October 9, 2020)

Before NEWSOM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Marco McIlwain, a Georgia prisoner serving a life sentence for felony murder, filed a complaint under 42 U.S.C. § 1983 alleging that prison workers were deliberately indifferent to his medical needs and retaliated against him when he filed grievances over their treatment. The district court dismissed his claims, finding that McIlwain failed to exhaust his administrative remedies. On appeal, McIlwain argues that the district court erred by not properly applying the steps we laid out in *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). After carefully reviewing the record and arguments before us, we agree. The district court did not sufficiently resolve the relevant factual disputes before dismissing his claims, as the second step in *Turner* requires. Accordingly, we vacate the district court's order and remand the case to the district court for further proceedings.

I.

Marco McIlwain is an inmate in the Special Management Unit at the Georgia Diagnostic and Classification Prison (GDCP) in Jackson, Georgia. He arrived at GDCP on August 11, 2016 with serious injuries, including stab wounds to his head and back and a collapsed lung. McIlwain alleges that workers at GDCP failed to provide adequate medical treatment for these injuries.

According to his complaint and his response to the defendants' motion to dismiss, McIlwain filed or attempted to file five different grievances related to the workers' conduct, but his efforts proved unsuccessful. McIlwain's first grievance

2

raised concerns over GDCP workers' failure to treat his injuries and give him pain medication. He submitted the grievance under his cell door to a prison counselor (one part of the counselors' duties at the prison was to accept such grievances). The counselor tore off the receipt portion of the form and returned it to McIlwain, keeping the other portions of the form for himself. The warden dismissed this first grievance as untimely, stating that McIlwain did not file it within ten days of the incident it described. McIlwain appealed, arguing that he had a receipt showing that he submitted the grievance within ten days of the incident. But the appeal was fruitless; the prison's central office denied it as untimely without any other explanation.

McIlwain alleges that he filed a second grievance concerning unreturned calls to medical staff and continued failure by GDCP workers to treat his medical needs. He never received a response—other than a statement from the nurse who gave him a receipt that medical officials were not going to help him because he kept filing grievances.

McIlwain next alleges that he was told by Dr. Edward Burnside, a prison physician, that he was going to have to learn to live with his back pain. Following that refusal of treatment, as well as harrowing experiences with incorrect medication, he filed his third and fourth grievances. The warden denied both. McIlwain alleges that he submitted appeals for these denials to his counselor—

3

hand delivering one appeal and mailing the other because the counselor did not come by his cell during the appeal window. McIlwain did not receive a response to either appeal.

Finally, McIlwain filed a fifth grievance detailing an incident in which an officer insisted that McIlwain drop his third grievance; the officer took away McIlwain's breakfast when he refused to do so. McIlwain claims that he mailed this grievance to his prison counselor but received a letter in reply stating that he could not file a third grievance until he dropped one of his two grievances that remained pending at that time.

After the prison either rejected or did not respond to his five grievances, McIlwain filed this complaint under § 1983, alleging that the defendants acted with deliberate and reckless indifference to his medical needs and retaliated against him in violation of the Eighth Amendment. He attached to his complaint, among other things, a receipt for the first grievance that showed a submission date within ten days of the incident it described.

In response, the defendants asked the district court to stay discovery, which it immediately did. They then moved to dismiss McIlwain's claims for failure to exhaust administrative remedies. As part of their motion, they submitted an affidavit from Counselor Goody stating that McIlwain's receipt for the first grievance was forged. McIlwain asked the district court to obtain the original copy

4

of the first grievance form and compare its tear lines to those on the receipt McIlwain submitted to show that he did not forge his receipt, but the district court never responded to this request.

A magistrate judge reviewed the case and recommended granting the defendants' motion to dismiss, making three conclusions in a report and recommendation. *First*, the magistrate judge concluded that the first grievance was untimely because "Defendants' submissions" were "more credible than Plaintiff's." *Second*, the magistrate concluded that McIlwain "failed to appeal" the denial of his third and fourth grievances. *Third*, the magistrate stated that the administrative remedies were "actually available" to McIlwain because he had "availed himself of the GDOC's grievance procedures numerous times." The magistrate judge cited the government's version of the facts when making these conclusions, relying heavily on the affidavit of Chanel Footman, the grievance coordinator at GDCP. McIlwain's second and fifth grievances were left unaddressed.

The district court adopted the magistrate judge's recommendation in full and dismissed McIlwain's claims. Neither the magistrate judge nor the district court

5

explained why McIlwain had failed to exhaust administrative remedies for his second or fifth grievance.

McIlwain appeals.

## II.

We review a district court's dismissal for failure to exhaust administrative remedies under the PLRA de novo. *Bingham v. Thomas*, 654 F.3d 1171, 1174 (11th Cir. 2011). We review the district court's factual findings for clear error. *Id.* at 1174–75.

## III.

## A.

The Prison Litigation Reform Act forbids suits by prisoners "with respect to prison conditions" under any federal law, including § 1983, "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is a mandatory pre-condition to suit. *Alexander v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998). But if remedies are unavailable to a prisoner, they (unsurprisingly) need not be exhausted. *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008).

State law "determines what steps are required to exhaust." *Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015); *see also Jones v. Bock*, 549 U.S. 199, 218 (2007). At the GDCP, standard operating procedures from the Georgia

Department of Corrections (GDOC) set out the steps required for exhaustion.

*First*, a prisoner must submit an original grievance within ten days of an incident.

The warden has forty days to respond.  *Second*, the prisoner must appeal within

seven days of receiving a denial or after the time allowed for the warden to decide

expires.  The Commissioner or her designee must deliver a decision on the appeal

to the inmate within one hundred days of receipt.

Failure to exhaust "is an affirmative defense under the PLRA" and "inmates

are not required to specially plead or demonstrate exhaustion in their complaints."

*Jones*, 549 U.S. at 216.  The burden is on the defendant to show a failure to

exhaust.  *Id.* at 212.  In *Turner*, we established a two-step process for resolving

motions to dismiss for failure to exhaust.  541 F.3d at 1082.  First, looking to the

defendant's motion and the plaintiff's response, the district court assesses whether

dismissal is proper under the plaintiff's version of the facts; and second, if

dismissal is inappropriate, the court makes "specific findings in order to resolve the

disputed factual issues related to exhaustion."  *Id.*  A district court may resolve

material questions of fact based on submitted papers only "in the absence of a

timely request for an evidentiary hearing."  *Bryant v. Rich*, 530 F.3d 1368, 1377

n.16 (11th Cir. 2008).  And the district court's findings must be specific enough to

provide this Court with an opportunity to conduct meaningful appellate review. *Danley v. Allen*, 480 F.3d 1090, 1092 (11th Cir. 2007).

If a district court fails to properly apply the two-step *Turner* test, remand is generally appropriate. *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1213 (11th Cir. 2015). But we need not remand if it would be futile, meaning if the outcome of the case could not change. *Hill v. Seaboard Coast Line R. Co.*, 885 F.2d 804, 810 (11th Cir. 1989).

## B.

Under *Turner*, a district court must make "specific findings" of fact to resolve disputed issues related to exhaustion before dismissing a prisoner's complaint for failure to exhaust administrative remedies. 541 F.3d at 1082. Here, the district court did not identify and make specific findings to resolve all relevant factual disputes regarding each of McIlwain's five grievances before dismissing his complaint for failure to exhaust. That means that the district court failed to follow our instructions from *Turner* and we must remand for it to make these findings in the first instance. *Whatley*, 802 F.3d at 1213. We address each of McIlwain's five grievances in turn to identify the disputed factual issues the district court failed to make specific findings to resolve.

*First*, the district court failed to make specific findings to resolve the disputed issue of whether McIlwain's first grievance was timely. The district court

8

stated in a footnote that Defendants' submissions were "more credible than Plaintiff's" but did not make any specific findings that would enable us to engage in meaningful review of this conclusion. And the district court did not explain why, even taking Defendants' submissions as true, the first grievance was untimely where McIlwain alleged an ongoing failure to treat his injuries as of the day he signed the grievance.

Further, the district court did not give McIlwain an opportunity to develop the record on this issue before deciding it based on submitted papers. *Bryant* instructs us that a district court may resolve disputed questions of fact on submitted papers only "in the absence of a timely request for an evidentiary hearing." 530 F.3d at 1377 n.16. In his response to the defendants' motion to dismiss, McIlwain requested an evidentiary hearing to compare the tear marks on his receipt with those on the original grievance form so that he could rebut the defendants' allegation of forgery. Again in his objections to the magistrate judge's report and recommendation, he requested "that the original documents of the grievances be submitted and put together because the counselor tears the receipt off and give[s] it to the inmate as Counselor Footman stated in her affidavit." This was an explicit request for the district court to gather a key document from the defendants and perform a specific evidentiary hearing—the kind of request *Bryant* contemplates.

9

But the district court never held such a hearing, and also decided the issue without making specific findings, violating the requirements of *Turner* and *Bryant*.

*Second*, the district court did not address McIlwain's second grievance, despite factual disputes between the parties over whether he had exhausted the claims related to this grievance. McIlwain proffered a receipt showing he submitted the second grievance, but the district court failed to address this grievance at all when dismissing his claims. The defendants acknowledge that the district court did not make specific findings with regard to this issue as required by *Turner*—and recognize that "remand would typically be appropriate"—but ask us to affirm because any remand would be futile. *Hill*, 885 F.2d at 810.

The problem with this argument is that its futility conclusion is based on new arguments not raised in the district court. And the defendants, not McIlwain, bore the burden of proving exhaustion. *Jones*, 549 U.S. at 212. For the first time, the defendants argue that even if McIlwain filed his second grievance, he failed to appeal it, rendering remand futile. But the district court was the proper forum in which to raise this argument. And, unlike the situation in *Hill*, the district court did not make factual findings regarding the second grievance that would inevitably doom McIlwain's claim should we remand. 885 F.2d at 810. Thus, remand is appropriate for the district court to undertake the second step of *Turner* and address

all disputed issues of material fact concerning whether McIlwain exhausted available remedies for his second grievance before dismissing that claim.

*Third*, the district court failed to make specific findings of fact when determining that McIlwain did not appeal his third and fourth grievances. The district court did not address McIlwain's appeal receipt for his third grievance. Nor did it address his argument that his counselor was unavailable during the appeal window for his fourth grievance, requiring him to mail the appeal. The defendants again admit that the district court did not make specific findings of fact as required by *Turner* for these two grievances, but claim that remand is unnecessary because even if McIlwain appealed these grievances, he did not wait for the Commissioner's one hundred-day response time to expire before filing this lawsuit. But we will not consider arguments raised for the first time on appeal. And remand is not futile because the district court made no factual findings relating to whether the Commissioner's time for responding to these appeals had expired. The district court on remand should allow McIlwain to develop the factual record on these issues and then identify and resolve relevant disputed issues, making specific factual findings along the way.

*Finally*, the district court failed to address McIlwain's fifth grievance, despite factual disputes between the parties over whether this claim was exhausted. For example, the parties dispute whether the two-grievance limitation rendered

11

administrative remedies unavailable for McIlwain to file his fifth grievance. Although the district court stated in a footnote that the grievance process was "actually available" to McIlwain because he "availed himself of the GDOC's grievance procedures numerous times," it did not address the impact of the standing operating procedures' two-grievance limitation or even mention the fifth grievance specifically.

The defendants again acknowledge that the district court did not make specific findings with regard to these issues as required by *Turner*—and again recognize that "remand would typically be appropriate"—but ask us to affirm because remand would be futile. *Hill*, 885 F.2d at 810. The defendants argue that the two-grievance limitation did not render the administrative process unavailable to McIlwain and that McIlwain's fifth grievance did not concern an emergency that could exempt it from the two-grievance limitation. But these arguments should be raised to the district court. And it is possible for the district court to disagree, meaning that remand is not futile. Thus, the district court must undertake the second step of *Turner* and address all disputed issues of material fact concerning whether McIlwain exhausted available remedies for his fifth grievance before dismissing this claim.

In light of the district court's failure to consider McIlwain's request for an evidentiary hearing concerning his first grievance and its failure to identify and

12

resolve relevant factual disputes between the parties before dismissing McIlwain's

claims, we are unable to adequately review its decision.  Accordingly, we vacate

the district court's order and remand the case to allow the district court to engage

in the second *Turner* fact-finding step with respect to each of the disputed issues

mentioned above.

**VACATED AND REMANDED.**