[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16465
_____

D.C. Docket No. 5:12-cv-00142-LGW-RSB


SHAWN WAYNE WHATLEY,

Plaintiff - Appellant,

versus

WARE SP WARDEN,
RODNEY SMITH, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(July 30, 2018)

Before ROSENBAUM, JILL PRYOR and RIPPLE,[*] Circuit Judges.

_____

[*] Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

RIPPLE, Circuit Judge:

On remand from this court,[1] the district court dismissed Shawn Whatley's 42 U.S.C. § 1983 complaint because he had failed to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Because we believe that, as a matter of law, the prison Commissioner's Office rendered a decision on the merits, we hold that Mr. Whatley has exhausted the available administrative remedies. Accordingly, we reverse the district court's judgment and remand the case for further proceedings consistent with this opinion.

# I

# BACKGROUND

## A.

In January 2011, Mr. Whatley was an inmate at Telfair State Prison, where, according to the allegations in his complaint, he was brutally beaten by prison guards and suffered serious injuries. Within hours, he was transferred, without receiving medical attention, to Ware State Prison. Once he arrived at Ware, Mr. Whatley had difficulty breathing, lost consciousness, and was carried to the

---

[1] Our earlier decision, discussed in detail later in this opinion, is reported at *Whatley v. Warden, Ware State Prison* (*Whatley I*), 802 F.3d 1205 (11th Cir. 2015).

medical ward. He alleges that a nurse gave him Tylenol and told him he would "be real sore for a while."[2]

Mr. Whatley brought this § 1983 action, raising Eighth and Fourteenth Amendment claims for the use of excessive force and deliberate indifference to his medical needs after the beating. The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all administrative remedies before filing his § 1983 suit. *See* 42 U.S.C. § 1997e(a). To exhaust administrative remedies under the Georgia Department of Corrections Standard Operating Procedures ("SOP"), inmates must follow the three-step prison grievance process outlined in SOP IIB05-0001.[3]  First, the inmate must complete the *informal grievance* step by filing an informal grievance on a prison-provided form with a grievance counselor.[4] The informal grievance must be filed "within ten days of becoming aware of the facts giving rise to his grievance."[5] *Id.* The grievance counselor may accept or reject the informal grievance for resolution based on criteria set forth in the SOP.[6] For example, a grievance counselor may reject an informal grievance if it "attempts to

---

[2] R.5 at 5.

[3] *Whatley I*, 802 F.3d at 1208; R.19-3.

[4] *Whatley I*, 802 F.3d at 1208. The SOP has since been "amended to eliminate the requirement that prisoners first file an informal grievance before they may file a formal grievance." *Id.* at 1208 n.1.

[5] *Id.* at 1208.

[6] R.19-3 at 4 (SOP IIB05-0001(VI)(A)).

3

grieve an item that is not grievable according to this policy, is out of time, includes

threats, profanity, insults or racial slurs that are not a part of the inmate's

complaint, or otherwise does not comply with the requirements" of the SOP.[7] If the

grievance is rejected for resolution, the inmate must be notified of the "specific

reason" for the rejection.[8] Rejecting a grievance for resolution in this way

terminates the grievance process, and there is no procedure that inmates can use to

appeal the rejection.

If the informal grievance is accepted for resolution on the merits, however,

the grievance counselor must give the inmate a grievance receipt form, meet with

the inmate, and respond in writing within ten days.[9] If the grievance counselor's

response to the inmate's informal grievance does not resolve his complaint, he can

proceed to step two.

At step two, an inmate can request a *formal* grievance form from his

grievance counselor.[10] The inmate has five days after receiving the form to file the

formal grievance with his grievance counselor.[11] The informal grievance must be

attached to the formal grievance form, and "[a]ny grievance which attempts to

---

[7] *Id.* at 5.

[8] *Id.*

[9] *Whatley I*, 802 F.3d at 1208; *see also* R.19-3 at 7.

[10] R.19-3 at 7 (SOP IIB05-0001(VI)(C)).

[11] *Id.* at 7–8.

address more than one issue or which addresses an issue not identified on the Informal Grievance will be rejected" for resolution.[12] Both a grievance counselor and a grievance coordinator review the formal grievance. The grievance coordinator then submits a recommended response to the warden or superintendent.[13] The warden has the authority to order additional investigation if necessary and, in any event, must provide a written response to the inmate.[14] The entire formal grievance step, including any investigation, must be completed within thirty days of the inmate's filing the formal grievance.

If the inmate is not satisfied with the warden's response, the inmate can move to the third step of the SOP, an appeal of the formal grievance to the commissioner's office.[15] The inmate must complete the formal grievance appeal form within five days of receiving the warden's response.[16] The appeal form includes copies of both the informal and formal grievances. The commissioner's office must respond within ninety days of receiving the inmate's appeal.[17]

---

[12] *Id.* at 8.

[13] *Id.*

[14] *Id.* at 8–9.

[15] *Id.* at 9 (SOP IIB05-0001(VI)(D)).

[16] *Id.*

[17] *Id.* at 10.

**B.**

Mr. Whatley filed, or attempted to file, multiple grievances "in which he at least arguably referred to the beating and the ensuing lack of medical treatment."[18] We focus our attention on three, which we will refer to as (1) the January 18 Grievance; (2) Informal Grievance 80327, or the "Imminent Danger" Grievance; and (3) Grievance 80940.

**1.    January 18 Grievance**

Mr. Whatley contends that on January 18, 2011, while he was at Ware, he submitted an informal grievance relating to the beating at Telfair and subsequent transfer without medical attention to Ware. The defendants have no record of this grievance. Mr. Whatley submitted several exhibits in support of his claim that it was filed. First, he submitted "Exhibit X," what he called "a true exact copy of a[n] informal grievance rec[ei]pt filed at Ware State Prison on 1-18-11."[19] The receipt, consistent with Mr. Whatley's allegations about the beating at Telfair, indicates that the "incident" occurred on January 12, 2011, but otherwise contains no information about the substance of the allegedly filed informal grievance.[20] It also has signatures in the spaces provided for "Deputy Warden of Care & Treatment"

---

[18] *Whatley I*, 802 F.3d at 1209.

[19] R.33 at 48.

[20] *Id.* at 49.

6

and "Counselor[]."[21] In response, the defendants submitted an affidavit from Edwina Johnson, the Deputy Warden of Care and Treatment, who averred that the signature was not hers.

Second, Mr. Whatley submitted "Exhibit X-1," a "direct appeal" form for the January 18 grievance.[22] He alleges that when the time allotted for a prison response to the January 18 grievance expired, he had not received such a response and attempted to "direct appeal" the informal January 18 grievance to the Warden.[23] The direct appeal form repeats the allegations about the beating and transfer and complains that Mr. Whatley did not receive a response to the January 18 informal grievance.[24] The SOP, as it existed at the time of Mr. Whatley's grievances, required inmates to comply fully with the informal grievance step before filing a formal grievance (although the SOP has been amended to eliminate this requirement). Because it had no record of Mr. Whatley's alleged informal grievance, the prison considered his "direct appeal" ineffective.

Finally, Mr. Whatley submitted "Exhibit X-2," a letter he allegedly submitted to his grievance counselor at Ware.[25] The letter, dated January 14, 2011,

---

[21] *Id.*

[22] *Id.* at 51.

[23] *Id.* at 51–52.

[24] *Id.* at 52.

[25] *Id.* at 54–55.

repeats Mr. Whatley's allegations about the beating at Telfair and subsequent transfer to Ware without medical attention. In the letter, Mr. Whatley appears to be following up on a conversation he had with his grievance counselor about the beating, during which Mr. Whatley informed Counselor Petrie that he "desired to file a grievance," and Counselor Petrie told Mr. Whatley "to write [him] and [he] would check into it."[26] There appears to be a response from Counselor Petrie at the bottom of the page: "Whatley, Filing a grievance is not gonna do you much good unless you made a … complaint prior to be[ing] transferred. If not, the grievance is gonna be rejected, but you can still submit a grievance. I've enclosed a[n] informal grievance form."[27] In response, the defendants submitted an affidavit from Counselor Petrie, who averred that he did not write or sign the letter.

## 2.    Informal Grievance 80327

About a month after Mr. Whatley arrived at Ware, he was transferred to the Georgia Diagnostic and Classification Prison ("GDCP"). Once there, Mr. Whatley filed Informal Grievance 80327 on February 10, 2011. Mr. Whatley refers to Informal Grievance 80327 as the "Imminent Danger" grievance. In the space marked "Date of Incident," Mr. Whatley wrote: "2-9-11 'Imminent Danger' Violation 8th & 14th Amendment of U.S. Constitution. I requested extreme

---

[26] *Id.* at 55.

[27] *Id.*

8

protective custody from all G.D.C. staff/employees, due to being sever[e]ly beaten and transferred without treatment."[28] In the space marked "Resolution Requested," Mr. Whatley wrote: "I request to be transferred to a non-state facility, where my life is not in jeopardy by the Department of Corrections and where I am not placed in hardship of cruel and unusual punishment conditions."[29]

The grievance counselor rejected Informal Grievance 80327 for resolution because it attempted to grieve a "[n]on-grievable" issue, specifically, "Transfer to Different Institution."[30] According to the defendants, Mr. Whatley's description of the beating and subsequent transfer without medical attention, coupled with his request for a transfer, was a complaint *about* a transfer. Therefore, pursuant to the SOP, Mr. Whatley's grievance counselor rejected Informal Grievance 80327 for resolution and never considered it on the merits. Mr. Whatley alleges that he was not notified of the grievance counselor's rejection of Informal Grievance 80327, an allegation not disputed by the defendants.

### 3.    Grievance 80940

Finally, while Mr. Whatley still was at GDCP, he filed Informal Grievance 80940 with a grievance counselor on March 7, 2011. In it, he complained that the

---

[28] R.19-5 at 3.

[29] *Id.*

[30] *Id.* at 2.

time for responding to Informal Grievance 80327 had passed, and that he wished to file a formal grievance.[31] Specifically, in the space marked "Date of Incident," Mr. Whatley wrote that a prison employee was "in violation of grievance procedure" because he had not received a response to Informal Grievance 80327 and "the allotted response time ha[d] expired."[32] In the space marked "Resolution Requested," Mr. Whatley requested to file a formal grievance.[33] Notably, Informal Grievance 80940 did not contain any specific allegations about the beating at Telfair or transfer to Ware without medical treatment, other than referring to Informal Grievance 80327 as the "Imminent Danger" grievance.[34]

Informal Grievance 80940 was accepted for resolution and then denied on the merits by the grievance counselor. The counselor indicated that Informal Grievance 80327 was rejected for resolution because it had attempted to grieve a "nongrievable issue" that "must be handled through [the] classification appeal process."[35] Therefore, contrary to Mr. Whatley's allegations in Informal Grievance 80940, prison officials had followed proper policy in their resolution of Informal Grievance 80327.

---

[31] As we have noted, Mr. Whatley apparently was not notified of the grievance counselor's rejection of Informal Grievance 80327.

[32] R.19-8 at 4.

[33] *Id.*

[34] *Id.*

[35] *Id.*

10

Mr. Whatley then moved on to the second step of the SOP by filing a formal grievance on March 22, 2011. Formal Grievance 80940 again referred to Informal Grievance 80327 as the "Imminent Danger" Grievance.[36] However, in Formal Grievance 80940, Mr. Whatley explicitly referred to the beating at Telfair and subsequent transfer without medical attention.[37] He also alleged that he had filed grievances every week since the beating and that they were not "being processed according to policy."[38] After investigating, the Warden denied Formal Grievance 80940 on the merits, responding in full:

> Informal grievances that you wish to file must be given to your counselor. You have no supporting evidence that you have filed grievances on a weekly basis and them not being processed. Grievance #80327 was rejected on 2-17-11 due to the fact that it was non-grievable, transfer to a different institution. This issue must be handled through the certification appeal process. Per phone conversation with Nurse Gore, you were seen at medical upon arrival on 2-9-11 and there was no evidence supporting your claim of being severely beaten. This grievance is denied at the institutional level.[39]

Notably, the Warden never invoked the internal prison grievance rule that the defendants now invoke to support their exhaustion argument here: that Grievance

---

[36] *Id.* at 3.

[37] Specifically, Mr. Whatley wrote that his "Imminent Danger" grievance "describe[d] the treatment that [he had] been under since 1-12-11 when [he] was unjustly and severely beat at Telfair State Prison by CERT Ofc. Smith and two other staff, and then transferred without medical attention." *Id.* at 3.

[38] *Id.*

[39] *Id.*

11

80940 must be dismissed because it raised more than one complaint (i.e., a complaint about the processing of Grievance 80327 and a complaint about the beating and subsequent care) and that a formal grievance cannot include a complaint that was not included in the informal grievance.[40]

Mr. Whatley proceeded to the third and final step of the SOP grievance resolution process by appealing the Warden's denial to the Commissioner's Office. In this appeal, he clarified that the intake nurse to whom the Warden referred would not have seen evidence of the beating on February 9 because too much time had passed, and all she "did was check[] vital signs and ask[] about medications"; she did not perform a physical examination.[41] He also disputed the Warden's rejection of his claim that he had filed grievances every week with no response.

The Commissioner's Office denied Mr. Whatley's appeal on the merits, responding in full:

> A member of my staff reviewed your grievance. In your written statements you alleged that Ms. Victoria Malone violated GDC's grievance procedure by not responding to a grievance you filed on February 15, 2011.[42]

---

[40] *See* R.19-3 at 8 ("Only one issue may be addressed per Formal Grievance. Any grievance which attempts to address more than one issue or which addresses an issue not identified on the Informal Grievance will be rejected.").

[41] *Id.* at 6.

[42] There is some discrepancy in the record about the date Informal Grievance 80327 was filed. The informal grievance form filled out by Mr. Whatley is dated February 10, 2011. The Warden's response is dated February 17, 2011. Here, the Commissioner's Office stated that it was filed on February 15, 2011. The exact date of the filing does not appear to be relevant to any

12

The grievance in question, informal grievance # 80327, was rejected because the issue you presented (transfer to another facility) is non-grievable, as stipulated in Standard Operating Procedure IIB05-0001. You were advised that the issue could be addressed via GDC's classification appeals process.

We found no evidence to indicate that Ms. Malone violated GDC's grievance procedure, as you alleged. This grievance is denied.[43]

The Commissioner's Office therefore addressed *on the merits* that part of Grievance 80940 complaining about the prison's handling of Grievance 80327. It said *nothing* about the care and beating allegations and gave *no* reason for not addressing that matter—although it *could have* refused to consider the grievance at all on procedural grounds, because prison rules permit only one complaint per grievance and forbid including in a formal grievance a complaint not included in the earlier informal grievance. The response of the Commissioner's Office to Mr. Whatley's appeal of Grievance 80940 fully exhausted the grievance resolution process for Grievance 80940.

## C.

Proceeding pro se, Mr. Whatley first filed this § 1983 action in 2012. His complaint alleges that on January 12, 2011, he "was brutally and savagely beaten without provocation and for no legitimate law enforcement or correctional

---

significant issues on appeal, and the parties are consistent in referring to Informal Grievance 80327 as the Imminent Danger grievance.

[43] *Id.* at 2.

reason."[44] He claims that the beating violated his Eighth and Fourteenth Amendment rights. Further, he alleges that the defendants failed to render "proper and adequate medical attention" after the beating in violation of the Eighth Amendment.[45]  The defendants moved to dismiss on the ground that Mr. Whatley had not exhausted his administrative remedies, as required by the PLRA. A magistrate judge filed a report and recommendation agreeing with the defendants; the district court adopted that opinion.

Mr. Whatley appealed. In our prior opinion, we first held that in analyzing Mr. Whatley's claims about the January 18 grievance, the district court had failed to follow the two-step process mandated by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). Under the first step of *Turner*, the district court was required to accept as true Mr. Whatley's alleged facts as they related to his exhaustion of administrative remedies. *See id.* at 1082. It would have been proper for the district court to dismiss the complaint at step one if Mr. Whatley's version of the facts entitled the defendants to dismissal. *See id.* If Mr. Whatley's version of the facts did not entitle the defendants to dismissal, the district court would proceed to the second *Turner* step and make specific factual findings on the question of exhaustion, resolving any factual disputes between the parties' accounts. *See id.* at

---

[44] R.5 at 2.

[45] *Id.* at 18.

14

1082–83. We remanded for the district court to "undertake the two-step *Turner* process" in determining whether the alleged January 18 grievance had exhausted Mr. Whatley's administrative remedies.[46]

Second, we held that in analyzing Grievance 80940, the district court "enforced a procedural bar that the prison itself may have waived."[47] The district court had held that Grievance 80940 did not exhaust administrative remedies regarding the assault because the informal grievance did not explicitly mention the assault, and prison officials could have declined to review the assault allegations for that reason. We announced for the first time that "a prisoner has exhausted his administrative remedies when prison officials decide a procedurally flawed grievance on the merits. … [D]istrict courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the rule."[48]

We noted, however, that we were not in a position to address "whether the prison declined to enforce its rule and waived the procedural flaw" in its response to Grievance 80940.[49] Informal Grievance 80940 had complained only of the prison's lack of response to Informal Grievance 80327, but when Mr. Whatley

---

[46] *Whatley I*, 802 F.3d at 1213.

[47] *Id.*

[48] *Id.* at 1215.

[49] *Id.*

15

filed Formal Grievance 80940 with the Warden, he added a complaint about the original beating and subsequent lack of medical care. We remanded for fact-finding about whether prison officials had waived the prison's procedural rules in their responses to Grievance 80940. Specifically, we stated:

> [A]s an appeals court, we are not in a position to find, in the first instance and as a factual matter, whether the prison declined to enforce its rule and waived the procedural flaw in this case. On appeal the parties argued at length over whether the warden's response to Mr. Whatley's formal grievance in fact addressed the merits of his claims about being beaten, or whether the warden was instead responding to Mr. Whatley's complaints about his earlier grievances being ignored. … [W]e must reverse for the District Court to make the necessary findings of fact.[50]

As Judge Vinson noted in his special concurrence, we did not define with any specificity the contours of the "waiver rule" we announced.[51] Notably, we did not speculate about what sort of prison response is required before the waiver rule applies. Judge Vinson suggested that if, on remand, the district court concluded that the Warden had waived the procedural rule at the intermediate review step, the district court "must then consider the more legally significant question of whether the grievance was considered and resolved on the merits by the Commissioner's Office at the third and final step."[52] Only then would the State be considered to

---

[50] *Id.* at 1215–16.

[51] *Id.* at 1216 (Vinson, J., concurring).

[52] *Id.* at 1217.

have "waived its exhaustion defense."[53] Otherwise, "regardless of whether the warden's earlier decision was on the merits," the defendants were entitled to dismissal.[54]

### D.

On remand, the district court, adopting a magistrate judge's report and recommendation, again dismissed Mr. Whatley's complaint for failure to exhaust administrative remedies. First, the district court applied the two-step *Turner* analysis to Mr. Whatley's claims about the January 18 grievance. The defendants conceded that Mr. Whatley's claims were not subject to dismissal at the first step of the *Turner* analysis, and the district court agreed, noting that under Mr. Whatley's version of the facts, he had "exhausted all the remedies available to him" and was prevented from completing the grievance process because he did not receive a response to his timely informal grievance.[55]

At step two of the *Turner* analysis, however, the district court resolved the factual dispute about whether the January 18 grievance was ever filed and concluded that it was not. Mr. Whatley submitted to the district court documents that he claimed to have submitted to prison officials in support of his grievance on

---

[53] *Id.*

[54] *Id.*

[55] R.85 at 11. Because the district court adopted the magistrate judge's report and recommendation in full, we cite it as the opinion of the district court.

January 18. The defendants presented, however, sworn testimony from two officials refuting the authenticity of Mr. Whatley's exhibits. Finally, there was ample evidence that Mr. Whatley had pursued a good number of grievances all the way through to the third and final step of resolution, indicating that he was aware of the proper process and that it was available to him. The prison kept records of those grievances and of Mr. Whatley's various appeals. The lack of any records relating to the purported January 18 grievance indicated to the district court that it never had been filed.

As for Grievance 80940, the district court applied the newly announced waiver rule of *Whatley I*. It determined that prison officials had not waived the procedural bar to considering Mr. Whatley's allegations about the beating and transfer without medical attention. First, at the Warden's level of review, the district court concluded that, as a matter of fact, the Warden had indicated he considered the merits of the beating allegations and, therefore, waived the procedural bar. However, the district court, adopting the rule in Judge Vinson's concurrence in *Whatley I*, held that the prison had not waived, for purposes of exhaustion, the rule forbidding two complaints in one grievance or a formal grievance containing a complaint not included in the informal grievance, because the Commissioner's Office did not address the merits of Mr. Whatley's allegations about the beating. The district court considered the Commissioner's silence on Mr.

Whatley's beating allegations to be an enforcement of the procedural rule prohibiting grievances from raising more than one complaint or from raising issues not included in the informal grievance. This enforcement of the prison's procedural rule "at the third and final stage of administrative review" made the Warden's earlier waiver of this rule "immaterial."[56]

Therefore, held the district court, even though Mr. Whatley pursued Grievance 80940 to the final stage of resolution under the SOP, he had not exhausted his administrative remedies as to the assault allegations because the Commissioner's Office resolved Grievance 80940 at the final level of review only on the allegations about the prison's mishandling of Informal Grievance 80327.

## II

## DISCUSSION

The district court dismissed Mr. Whatley's complaint for failure to exhaust administrative remedies under the PLRA. We review a district court's interpretation of the PLRA's exhaustion requirement de novo. *Whatley I*, 802 F.3d at 1209. However, we review the district court's factual findings on the issue of exhaustion for clear error. *Id.* For all other facts, we accept as true the facts pleaded in Mr. Whatley's complaint and draw all reasonable inferences in his favor. *Id.*

---

[56] *Id.* at 19.

19

Our analysis will proceed in two parts. First, we will examine the district court's *Turner* analysis and its factual finding that Mr. Whatley did not file a grievance on January 18. Second, we will determine whether the district court properly applied *Whatley I* and, in so doing, properly determined whether the prison waived any procedural objections to considering the merits of the assault allegations in Grievance 80940.

## A.

The district court applied the two-step *Turner* analysis to Mr. Whatley's claims about the supposed January 18 grievance. It concluded that the complaint was never filed. Because the district court properly applied *Turner* and we see no clear error in its factual findings, we will not disturb its decision.

Failure to exhaust administrative remedies is an affirmative defense. The burden therefore is on the defendant to show that the plaintiff has not exhausted properly his administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). As we noted in *Whatley I*, district courts must follow the two-step process outlined in *Turner* when considering whether dismissal for failure to exhaust is appropriate under Federal Rule of Civil Procedure 12(b)(6). Under *Turner*, the district court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Turner*, 541 F.3d at 1082. If the defendants can establish failure to

20

exhaust based on the *plaintiff's* allegations, dismissal of the complaint is appropriate. *Id.* Otherwise, at step two of the *Turner* analysis, the district court must "make specific findings in order to resolve the disputed factual issues related to exhaustion," with the burden of proof remaining on the defendant to show "that the plaintiff has failed to exhaust his available administrative remedies." *Id.* After making specific findings of fact, the district court "then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

Here, the defendants conceded that under Mr. Whatley's version of the facts, he had exhausted all available remedies. Dismissal under step one of *Turner* therefore was not appropriate. We therefore proceed to Mr. Whatley's challenges to the district court's fact-finding at step two of the *Turner* analysis. He claims that the district court clearly erred in crediting the defendants' affidavits and in looking to Mr. Whatley's grievance history at a different prison as evidence that prison officials did not make remedies unavailable to him. He also maintains that the district court "ignored" his corroborating evidence.[57]

"For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be left with the definite and firm conviction that a mistake

---

[57] Appellant's Br. 23.

21

has been committed." *Bryant v. Rich*, 530 F.3d 1368, 1377 (11th Cir. 2008) (quoting *Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 465 F.3d 1267, 1275 (11th Cir. 2006)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985). "Where there are two permissible views of the evidence," the district court's choice of one of those views "cannot be clearly erroneous." *Id.* at 574. We see no clear error in the district court's finding that Mr. Whatley's January 18 grievance was never filed.

The district court permissibly weighed the evidence and credited the defendants' affidavits over Mr. Whatley's exhibits. *See Bryant*, 530 F.3d at 1373–74;[58] *cf. Anderson*, 470 U.S. at 574 (clear error standard applies even when district court's factual findings "are based … on physical or documentary evidence or inferences from other facts," rather than credibility determinations). The district

---

[58] In *Bryant*, we held that a district judge can act as a fact-finder to resolve a dispute when a failure-to-exhaust-nonjudicial-remedies defense is invoked. *Bryant v. Rich*, 530 F.3d 1368, 1373–74 (11th Cir. 2008). We then went on to note that "in the absence of a timely request for an evidentiary hearing [on the issue of exhaustion] and where the resulting order is to be a dismissal without prejudice, a district court may resolve material questions of fact on submitted papers for the PLRA's exhaustion of remedies requirement. *Id.* at 1377 n.16.

Mr. Whatley's claim that the district court ignored his corroborating documentary evidence cannot be squared with the magistrate judge's report and recommendation. The report specifically states that the court "reviewed all of [Mr. Whatley's] … filings." R.85 at 12.

court also appropriately considered Mr. Whatley's history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him or lose or destroy his grievances. Mr. Whatley's claim was belied by the lack of documentation anywhere in the grievance record system relating to the alleged January 18 filing. Although, as a theoretical matter, the lack of documentation in the record system is consistent with Mr. Whatley's claim that the defendants deliberately lost or destroyed his January 18 grievance, a district court does not clearly err when it makes a choice between "two permissible views of the evidence." *Id.*

In conclusion, the district court did not clearly err in determining that Mr. Whatley never filed a grievance on January 18. Therefore, the purported January 18 grievance cannot be considered to have exhausted Mr. Whatley's administrative remedies regarding the assault at Telfair.

## B.

Next, Mr. Whatley contends that the district court misapplied our directive in *Whatley I* and that he exhausted his administrative remedies regarding the assault allegations when he pursued Grievance 80940 through the final administrative step. We agree. First, we reiterate what we held in *Whatley I*. "[A] prisoner has exhausted his administrative remedies when prison officials decide a procedurally flawed grievance on the merits. … [D]istrict courts may not enforce a

prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the rule." *Whatley I*, 802 F.3d at 1215. Second, in accord with Judge Vinson's concurring opinion in *Whatley I*, we hold that a prison does not waive a procedural defect unless and until it decides the procedurally flawed grievance on the merits at the last available stage of administrative review.[59] In Mr. Whatley's case, that means that the response that matters for purposes of applying *Whatley I*'s waiver rule is the response from the Commissioner's Office. Third, we now hold explicitly what was implicit in our holding in *Whatley I*. Consistent with the law of all other circuits to have considered the issue, we hold that a prison waives its procedural objections to considering the merits of a grievance, and therefore waives its exhaustion defense, if it does not *explicitly* rely on the grievance's procedural shortcomings as an adequate and independent ground for denying the grievance at the administrative level. Because the Commissioner's Office denied one of Mr. Whatley's claims in Grievance 80940 *on the merits* and did not respond to Mr. Whatley's second claim about the beating (to which the Warden had given a merits-based response), the Commissioner waived any procedural defect in Grievance 80940 at the final level of administrative review.

---

[59] We note that in an unpublished order, we already have interpreted *Whatley I* to require waiver of the procedural defect at the "final stage" of the grievance process. *Glenn v. Smith*, 706 F. App'x 561, 564 (11th Cir. 2017) (unpublished) (per curiam).

These holdings harmonize our approach with other circuits. First, all other circuits to have considered the issue have held that in considering whether a prison waived its procedural objections to a grievance by considering it on the merits, we must look to the prison's response at the final level of administrative review. In *Reed-Bey v. Pramstaller*, which we found "particularly persuasive" in *Whatley I*, 802 F.3d at 1215, the Sixth Circuit announced a waiver rule that applied when the prison had considered on the merits a procedurally defective grievance at every step of the resolution process. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 326 (6th Cir. 2010) ("We instead conclude that Reed-Bey properly exhausted his claim because he invoked *one complete round* of the Department's grievance procedures and received merits-based responses *at each step*." (emphasis added)); *see also Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) ("[W]e hold that a prisoner exhausts … under the PLRA … if prison officials ignore the procedural problem and render a decision on the merits of the grievance *at each available step of the administrative process*." (emphasis added)); *Hammett v. Cofield*, 681 F.3d 945, 948 (8th Cir. 2012) (finding waiver when inmate's procedurally defective grievance was "denied on the merits" at all steps of the appeal process); *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) (finding waiver of timeliness requirement when prison had considered grievance on the merits "at the second *and final* level of review" (emphasis added)); *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000) ("[W]e are

25

told by defendants themselves that Camp's allegations have been fully examined *on the merits* by the ultimate administrative authority and have been found wanting. With that substantive determination having already been made at the highest level, … judicial consideration is now open to him.").

Our focus on the prison's response at the final level of administrative review also comports with the purpose of the PLRA's exhaustion requirement. As our colleagues in the Sixth Circuit noted in *Reed-Bey*, the exhaustion requirement serves the prison's "interest in creating a prison grievance system, its interest in reviewing a complaint before another sovereign gets involved and its interest in deciding when to waive or enforce its own rules." *Reed-Bey*, 603 F.3d at 325. The "prison grievance system" includes *all* levels of administrative review. A prison preserves its interest in enforcing its own procedural rules when it enforces those rules at the final level of administrative review.[60]

From what we already have said, it should be apparent that we believe that the district court followed our remand order in a principled and pragmatic way. In

---

[60] Of course, what constitutes the "final level" of administrative review might vary with the facts of any given case. A grievance can be exhausted without being appealed all the way through the grievance resolution procedure. Here, Mr. Whatley was required to appeal Grievance 80940 through all levels of review, because it was denied at each level. In *Ross v. County of Bernalillo*, though, the Tenth Circuit found a prison to have waived a procedural defect in a grievance when it resolved the inmate's grievance on the merits at the first level of review by providing the requested relief. *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 223 (2007). Because the inmate exhausted his administrative remedies at that point, he was not required to pursue the rest of the grievance process. *Id.*

*Whatley I*, we remanded this case for a determination of whether the *Warden* had, as a matter of fact, reached the merits of the beating allegations, even though Mr. Whatley had violated the SOP by including such allegations in Formal Grievance 80940. Although we did not mention explicitly the need to consider as well the later actions of the Commissioner, it was implicit in our remand order that the district court would need to do so. We instructed the district court to determine "whether the prison declined to enforce its rule and waived the procedural flaw in this case."[61] That instruction required the district court to determine what action of prison authorities constitutes a waiver.

The district court correctly read our remand order and found, as a threshold matter of fact, that "[a] plain reading of the warden's response to Grievance 80940 leads to the conclusion that he considered the merits of the excessive force and deliberate indifference claims."[62] Accordingly, the district court found that the Warden "waived the procedural bar at the second stage of administrative review."[63] We agree and see no clear error in the district court's factual finding. The Warden clearly read Grievance 80940 as raising two claims: (1) that the prison had not followed proper procedure in resolving Grievance 80327; and (2) that Mr.

---

[61] *Whatley I*, 802 F.3d at 1215.

[62] R.86 at 16.

[63] *Id.* at 17.

27

Whatley had been beaten at Telfair and transferred without medical treatment. We know this because the Warden clearly responded to *both* claims on the merits, finding (1) that there was no evidence that the prison had not followed the proper procedure in resolving Grievance 80327; and (2) that "there was no evidence supporting [Mr. Whatley's claim of being severely beaten.]"[64] More fundamentally, although the Warden *could have* rejected Grievance 80940 in its entirety for raising more than one complaint, the Warden gave merits-based responses to both complaints.

The district court then determined, however, that because the Commissioner's Office "made no reference to [Mr. Whatley's] beating or to the sufficiency of his medical care," the Commissioner preserved the procedural objection to considering the merits of those claims. We cannot agree. As we now will explain, implicit in our holding in *Whatley I* (consistent with all other circuits to have considered the issue) is a requirement that prison officials *explicitly* rely on procedural defects at the administrative level if they wish to preserve them for purposes of exhaustion. As a matter of law, we hold that the Commissioner's Office did not preserve the prison's procedural objection simply by refusing to

---

[64] R.19-8 at 5.

consider the merits of allegations to which the Warden gave merits-based responses.

Our holding in *Whatley I*—that "district courts may not find a lack of exhaustion by enforcing procedural bars that the prison declined to enforce"— necessarily implicates the question of how we should determine whether, in fact, the prison responded to the prisoner's complaints on the merits or instead enforced a procedural rule. All other circuits to have considered this question have held that, to preserve its procedural objection, the prison must affirmatively invoke the procedural rule at the administrative level. *See, e.g.*, *Hammett v. Cofield*, 681 F.3d 945, 948 (8th Cir. 2012) (finding waiver of a prison procedural rule when prison's response to the grievance "did not note or address" the procedural defect and denied grievance on the merits); *Reed-Bey v. Pramstaller*, 603 F.3d 322, 323 (6th Cir. 2010) (placing burden on prison to "invoke its procedural bar" rather than "dismiss[ing] grievance on the merits"); *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005) (holding that "a procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming" in denying the grievance). The consensus rule reinforces and is supported by our holding in *Whatley I*. If we do not require prison officials to be explicit if they wish to deny grievances on procedural grounds, we open the door for prison officials to raise procedural

29

objections in later litigation that they might not have relied on at the administrative level. Requiring an explicit invocation of procedural rules at the administrative level ensures that we will only enforce procedural rules that the prison itself chose to enforce in its own administrative review.

We must therefore hold that the district court erred in concluding that the Commissioner's Office preserved the prison's procedural objections because it "made no reference to [Mr. Whatley's] beating or to the sufficiency of his medical care in its review of Grievance 80940" and therefore "did not address [Mr. Whatley's] substantive claims about the beating."[65] When the Commissioner decided Mr. Whatley's appeal of Grievance 80940, he had before him a grievance that clearly raised two complaints and the Warden's merits-based denials of both of them. In these circumstances, if the Commissioner had wanted to preserve his procedural objection to considering the merits of Grievance 80940, the Commissioner needed to do more than decide one allegation on the merits and then ignore the beating allegations. Rather, the Commissioner needed to invoke the prison's procedural rules and deny Grievance 80940 explicitly on procedural grounds for its failure to comply with the SOP. The Commissioner's failure to do so compels the legal conclusion that the prison did not rely on a procedural defect

---

[65] R.86 at 18–19.

in denying Grievance 80940. The defendants therefore have waived their procedural objections to Grievance 80940, and Mr. Whatley fully exhausted his administrative remedies when he pursued Grievance 80940 through each administrative level of review and received merits-based responses at each level.

## C.

Mr. Whatley also submits that prison officials made administrative remedies unavailable to him by improperly rejecting Informal Grievance 80327. Mr. Whatley contends that his grievance counselor incorrectly interpreted Informal Grievance 80327 to be a complaint about a transfer and therefore improperly rejected Informal Grievance 80327 for complaining about a non-grievable issue (transfer). Further, he submits that the prison's improper rejection of Informal Grievance 80327 made further administrative remedies unavailable to him and, therefore, Informal Grievance 80327 properly exhausted his administrative remedies.

Any argument that Mr. Whatley wishes to make now about Informal Grievance 80327 is not properly before us on his second appeal. Mr. Whatley did not preserve any arguments about Informal Grievance 80327 in his *first* appeal, where he was represented by counsel. In fact, he admitted that Informal Grievance

31

80327 "sought transfer to a non-state facility."[66] Therefore, these arguments were not properly preserved in his first appeal and were not properly before the district court on remand. They are not properly before us now.

## Conclusion

For the reasons set forth in the foregoing opinion, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED

---

[66] Brief of Appellant at 7, *Whatley I*, 802 F.3d 1205 (No. 13-15117).