[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11248
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-00192-WLS-TQL


WILLIE FRANK WRIGHT, JR.,

Plaintiff-Appellant,

versus

PA BROWN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(June 5, 2020)

Before JILL PRYOR, LAGOA and HULL, Circuit Judges.

PER CURIAM:

Willie Frank Wright Jr., a Georgia prisoner proceeding *pro se*, appeals following the dismissal of his 42 U.S.C. § 1983 civil rights suit for failure to exhaust administrative remedies. After careful review, we affirm.

## I.    BACKGROUND

This case arises out of medical treatment Wright received while incarcerated at Calhoun State Prison ("CSP") and Autry State Prison ("ASP"). Wright filed a *pro se* complaint under § 1983 against Patricia Brown, a physician's assistant at ASP, in which he alleged that he had "untreated wounds on [his] legs, arms, and head in the back." Doc. 1 at 8.[1] Wright alleged that, while housed at ASP, he experienced an allergic reaction to an antibiotic and broke out in a rash. Brown prescribed him hydrocortisone "but it did not work." *Id.* at 6. Wright was transferred to CSP and sought care because he was developing sores on his body. Wright alleged that a CSP doctor told him the sores were the result of an internal infection and that, left untreated, the infection could cause gangrene. He further

---

[1] Citations in the form "Doc. #" refer to numbered entries on the district court's docket.

Wright's complaint also contained allegations against two other defendants, "Mr. Betterson" and "Captain Justin Mock." A magistrate judge recommended that the district court dismiss without prejudice any claims against these defendants because they were unrelated to Wright's claims against Brown, and Wright did not object to this recommendation. The district court adopted the magistrate judge's recommendation and dismissed claims against these defendants.

Wright appears to argue on appeal that these defendants should not have been dismissed. Wright waived his right to challenge their dismissal by failing to object to the magistrate judge's report and recommendation, and considering the court's dismissal was without prejudice, it is not "necessary in the interests of justice" that we address Wright's argument. 11th Cir. R. 3-1.

2

alleged that the doctor advised that if he developed gangrene, "they would have to cut off [his] legs." *Id.* at 8.  The medical providers at CSP prescribed an antibiotic, ibuprofen, Lamisil, and triamcinolone cream, and planned to order a blood test to confirm the type of infection.

Wright alleged that the rash was "clearing up a bit" when he was transferred back to ASP.  *Id.* at 7.  There, Brown took away the medications CSP providers had prescribed, failed to order a blood test, and again gave Wright hydrocortisone even though Wright informed Brown that nothing had worked except the medications he took at CSP.

Wright alleged that Brown's refusal to reinstate the treatment plan from CSP was "retaliation because [Wright was] suing [Brown's] nephew Antonio Brown in Wilcox Superior Court and he was fired from his job" and the case was set for a trial.  *Id.* at 8.  Wright alleged that he filed a grievance about Brown's treatment of him but ASP had an "unconstitutional policy" that only permitted two grievances at a time, meaning a third could not be filed if two already were pending.  *Id.*

The district court referred the case to a magistrate judge, who issued a report and recommendation ("R&R").[2]  The magistrate judge noted that Wright was

---

[2] Wright attached a statement to his complaint that he did not want "a magistrate judge to oversee this case."  Doc. 1-2.  Wright argues that it was error for the district court to refer the case to a magistrate judge given his request, but we disagree.  A district court may designate a magistrate judge to issue nondispositive orders and make recommendations on dispositive issues,

3

subject to the "three strikes provision" of 28 U.S.C. § 1915(g) because he has had at least three federal lawsuits dismissed as frivolous or malicious or for failure to state a claim.  The judge nonetheless recommended that the district court permit Wright's claims against Brown—which the magistrate judge construed as an Eighth Amendment claim for deliberate indifference to medical needs and a First Amendment retaliation claim—to proceed under the "imminent danger" exception to the three-strikes provision.  *See Mitchell v. Nobles*, 873 F.3d 869, 872 (11th Cir. 2017) ("Section 1915(g) . . . generally bars a prisoner from proceeding [*in forma pauperis*] if he has previously filed three or more meritless lawsuits.  This provision is commonly known as the 'three strikes' provision. . . .  [T]he sole exception to the three strikes bar is where the prisoner is under imminent danger of serious physical injury." (internal quotation marks omitted)).  The district court adopted the R&R.

Brown moved for summary judgment, arguing that Wright failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  She asserted that the administrative appeal for Wright's only relevant grievance was still pending; thus, he had not exhausted his remedies before filing suit.  Brown provided the Georgia Department of

---

even without the parties' consent.  *See* 28 U.S.C. § 636(b)(1); *see also Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512-13 (11th Cir. 1990).

4

Corrections' ("GDC") Standard Operating Procedures ("SOP") relating to grievance procedures, Wright's grievance history, one of his grievances (the one Brown said was relevant to this case), and Wright's medical records.

Brown also included with her motion an affidavit from ASP's Chief Counselor and Grievance Coordinator, who described the two-step grievance process available to GDC prisoners at the time of Wright's grievance in 2017. First, an aggrieved prisoner would submit a grievance using a form. The grievance had to be filed within 10 days of the date the prisoner knew or should have known of the facts giving rise to the grievance and contain "a single issue/incident." Doc. 19-3 at 4. The Grievance Coordinator would "screen[] the grievance and make[] a recommendation to reject or accept the grievance"; the Warden would then review the recommendation. *Id.* Among other reasons, the Warden could reject a grievance if the prisoner already had "two active grievances." *Id.* If the Warden rejected the grievance, a prisoner could appeal to GDC's Central Office. GDC's policies gave its Commissioner 100 days to decide the appeal. The grievance procedures contained no provision permitting prisoners to bypass the grievance process.

A copy of GDC's SOPs in effect at the time of Wright's grievance, attached to Brown's motion for summary judgment, corroborated the affidavit's description of the grievance procedures, including the limit on "two active grievances." Doc.

19-4 at 7.  Under the SOPs, "[i]n order for [a prisoner] to file a new grievance (more than two active grievances), [he] must drop one of the outstanding active grievances being processed."  *Id.*  If he "does not desire to drop one of the two active grievances then the third grievance will not be processed."  *Id.*  The SOPs also stated, as the Grievance Coordinator had recounted, that a grievance may only contain "a single issue/incident."  *Id.* at 8.

According to the Grievance Coordinator's affidavit, of 19 grievances Wright submitted at ASP, only one, dated December 27, 2017, "pertain[ed] to medical care."  Doc. 19-3 at 5.  The Warden rejected that grievance because it "raised more than one issue," *id.* at 6, and Wright timely appealed.  In the form for filing his appeal, Wright challenged the Warden's decision because "[i]t is not more than one issue, it is about medical deliberate indifference cause[d] by retaliation."  Doc. 19-6 at 5.  The Commissioner had 100 days from the date of the appeal to render a decision, and at the time the affidavit was signed—after Wright had filed suit in federal court—that time had not expired and the grievance was "still pending appeal."  Doc. 19-3 at 6.

Finally, Brown provided an affidavit in which she stated that she did not have a nephew named Antonio Brown nor did she have any nephew who worked in Georgia's prison system.

6

In response, Wright elaborated on the timing of the treatment he received and on his grievance. He stated that "the claims of this suit arise from the [physician's assistant] visit on 10-3-2017," but that he "was told by several counselors that he had more than 2 pending grievances and they would not take up the grievance on Mrs. Brown." Doc. 35 at 13, 15. He stated that he "agreed to drop several grievances" on December 27, 2017 and only then could grieve the incident involving Brown. *Id.* at 13. Wright argued that he was not required to administratively exhaust his claims against Brown because the grievance procedure effectively was "not available" to him. *Id.*

The district court again referred the case to a magistrate judge. The magistrate judge issued an R&R recommending that the district court grant Brown's motion. The magistrate judge noted that a failure to exhaust remedies should be raised via a motion to dismiss and that Brown's motion for summary judgment should be treated as one seeking dismissal. The magistrate judge then concluded that Wright had not exhausted his administrative remedies as the PLRA requires.

Wright objected to the R&R, arguing, among other things, that the grievance procedure was unconstitutional because it forced prisoners to drop grievances before filing a new grievance if more than two grievances remained pending. Wright also filed a notice of "NEWLY DISCOVERED EVIDENCE" regarding the

7

procedure for dropping a grievance. Doc. 67 at 1. In his filing he stated that GDC's grievance procedure required that an "Active Grievances Process Form, SOP 227.02 Attachment 10" be given to a prisoner if he requests to file a grievance but already has two pending grievances. *Id.* Wright attached the "Active Grievance Process Form," dated June 28, 2018 and labeled "Attachment 10." Doc. 67-1 at 1. The form explained:

> The attached grievance has exceeded your filing limit. Per SOP, you may only have two (2) active grievances at the local level. You have the option to drop one (1) of your active grievances __ or __. If you do not wish to drop one (1) of your active grievances, this grievance will not be processed.

*Id*. The form further stated that if the prisoner chose to drop one of his active grievances, he could "return this form and the attached grievance" within five days. *Id.* Wright's filing also included an "AFFIDAVIT," in which Wright stated that he "never had any knowledge of this procedure" until after he filed suit. Doc. 67 at 2. The SOPs Brown had attached to her motion for summary judgment referenced Attachments 1 through 9, but not an Attachment 10.

The district court overruled Wright's objections, adopted the magistrate judge's R&R, and dismissed the action. The court rejected Wright's argument that the administrative grievance procedures were unavailable to him and agreed with the magistrate judge that Wright had failed to complete the entire grievance process, as required, before filing suit. The court declined to consider Wright's

8

"newly discovered evidence" but noted that the filing "d[id] not change the [c]ourt's findings." Doc. 68 at 4. The court rejected Wright's argument that the grievance policy was unconstitutional, concluding that the issue was "not before the [c]ourt" and, alternatively, that the argument failed on the merits. *Id.* at 5.

This is Wright's appeal.

## II.    STANDARDS OF REVIEW AND LEGAL FRAMEWORK

We liberally construe *pro se* pleadings and hold them to a less stringent standard than counseled pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

We review a district court's interpretation of the PLRA's exhaustion requirement *de novo*. *Whatley v. Smith*, 898 F.3d 1072, 1082 (11th Cir. 2018). However, we review the district court's factual findings on the issue of exhaustion for clear error. *Id.* For a factual finding to be clearly erroneous, we must be left with the definite and firm conviction that a mistake has been committed after reviewing the evidence. *Id.* For all other facts, we accept as true the facts pleaded in the plaintiff's complaint and draw all reasonable inferences in his favor. *Id.*

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The district court must undertake a two-step

process when determining whether a prisoner has exhausted his administrative remedies.  First, the district court must examine the factual allegations in the motion to dismiss and plaintiff's response, "and if they conflict, takes the plaintiff's version of the facts as true." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  Second, if the complaint is not then subject to dismissal, the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.*  The defendant bears the burden of proving that the plaintiff has failed to exhaust his available administrative remedies.  *Id.*  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

To properly exhaust administrative remedies a prisoner must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself. *Jones v. Bock*, 549 U.S. 199, 218 (2007).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust, . . . but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* (internal quotation marks omitted).  An untimely or otherwise procedurally defective administrative grievance is insufficient to meet § 1997e(a)'s exhaustion requirement.  *Woodford v. Ngo*, 548 U.S. 81, 83-84

10

(2006). Indeed, a prisoner must exhaust his administrative remedies even when doing so would be futile. *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998). An "available" remedy does not mean an "adequate administrative remedy." *Id.* at 1326-28. "The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Turner*, 541 F.3d at 1085 (internal quotation marks omitted).

The Supreme Court has identified three kinds of circumstances in which an administrative remedy is unavailable. *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

## III.  DISCUSSION

Wright argues that the district court erred in concluding that administrative remedies were available and that he failed to exhaust those remedies. He advances several claims of error, but together those claims amount to two arguments for why

11

dismissal was improper. Wright first argues that district court failed to consider the evidence he submitted that ASP never informed him of the procedure for dropping a grievance. He contends, as he stated in his "AFFIDAVIT," that he did not know that SOP 227.02 Attachment 10 was the proper grievance drop form until after he filed this suit because no one gave him a copy of it. And he faults Brown, who bore the burden to prove his failure to exhaust, for failing to submit this Attachment with her motion for summary judgment.

Second, Wright argues that GDC's grievance procedure is unconstitutional.[3] He argues that the procedure violates his right to due process in three ways: (1) the policy has a 10-day deadline to file grievances; (2) a prisoner can only have two active grievances at one time; and (3) the policy requires that a prisoner drop one of two pending grievances if he wishes to file a new grievance. For these reasons, Wright argues, he had no available administrative remedy and was not obligated to exhaust his remedies before filing suit.

The problem with Wright's arguments on appeal is that the Warden's reason for rejecting his medical grievance was not because he had two active grievances

---

[3] Wright arguably has abandoned this claim by failing to argue it in response to Brown's motion for summary judgment. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325-26 (11th Cir. 2000) (explaining that a party may abandon a claim that he alleged in a complaint where he failed to brief and argue it before the district court). Since Wright was and is now *pro se* and the district court addressed the claim on the merits, we address his arguments here.

12

and failed to drop one or that he was late in filing the medical grievance. Rather, the Warden rejected the grievance because it raised more than one issue, in violation of GDC policy.[4] Although Wright timely appealed that decision to the Commissioner, he did not await the Commissioner's decision (or the passing of the deadline for a decision) before filing suit. Thus, he failed to exhaust his administrative remedies, and that failure is not related to his complaints about the grievance procedure or his awareness of the grievance drop policy.

More specifically, Wright argues that the district court failed to consider his "newly discovered evidence," a grievance drop policy dated June 28, 2018—six months *after* Wright filed his medical grievance—and an "AFFIDAVIT" in which Wright stated that he was unaware of this policy.[5] But the Warden's rejection of Wright's grievance, and Wright's appeal of that rejection, did not relate to the grievance drop policy at all. Thus, the district court correctly determined that the materials Wright submitted did not affect the outcome of the exhaustion analysis. *See* Doc. 68 at 4. For this same reason, Brown cannot be faulted for failing to submit the grievance drop policy in conjunction with her motion for summary

---

[4] We express no opinion on whether the Warden's decision that the grievance raised more than one issue was correct based on the content of the grievance.

[5] Wright also argues that the magistrate judge erred in failing to consider his submissions. But Wright filed his "newly discovered evidence" after the magistrate judge issued the R&R. At that point, any objections and materials relating to the objections were for the district court to review. *See* 28 U.S.C. § 636(b)(1) (requiring the district court to review the R&R and any objections).

13

judgment. Moreover, it appears from the record that Attachment 10, the grievance drop form, was not part of the SOPs at the time Wright filed his medical grievance: it was not listed as an attachment in the SOPs effective when Wright grieved Brown's medical treatment, and it is dated several months after Brown treated Wright and after Wright filed his grievance.

Wright's challenges to the constitutionality of GDC's grievance policy also center on the grievance drop policy. He argues specifically that the requirement that he drop a valid grievance so that the prison administration can entertain another valid grievance violates his due process right to be heard on a valid grievance. But Wright's failure to exhaust his administrative remedies was unrelated to GDC's grievance drop policy. Rather, he failed to exhaust his remedies because he did not await a decision from the Commissioner on his appeal or the expiration of the time for the Commissioner to render a decision. And the original denial of his grievance, as well as his appeal of that denial, was based on the Warden's decision that Wright's grievance involved more than one issue, in violation of GDC policy. Wright suffered no injury from GDC's grievance drop policy; thus, regardless of its constitutionality, Wright lacks standing to challenge it. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

The district court correctly applied the two-step *Turner* analysis. The court examined the factual allegations in Brown's motion and Wright's response and

14

took Wright's version of disputed facts as true. *Turner*, 541 F.3d at 1082. The court then decided, based on those facts, that Wright had failed to exhaust his "available administrative remedies." *Id.* at 1083. The court correctly determined that Wright failed to demonstrate that the administrative process was unavailable to him, particularly because he suffered no harm from his primary complaint, the prison's treatment of the grievance drop policy. *See Ross*, 136 S. Ct. at 1859. We therefore affirm the district court's dismissal of the suit for lack of exhaustion.[6]

**AFFIRMED.**

---

[6] Wright's brief on appeal includes several requests, including that we define "[w]hat is required when a petitioner files suit under imminent danger," and poses several follow-up questions, including whether he is even required to exhaust his administrative remedies when alleging imminent danger. Appellant's Br. at 12. Federal courts are prohibited from issuing advisory opinions by the case-or-controversy requirement found in Article III of the United States Constitution. *See e.g.*, *Flast v. Cohen*, 392 U.S. 83, 96 (1968). In any event, we note that although imminent danger is an express exception to the "three-strike" provision regarding a prisoner's ability to proceed IFP, there is no similar exception to the PLRA mandatory exhaustion requirement.